Paschal, adm'r. *vs.* Davis.

No. 41.—Isaiah Paschal, adm'r. *de bonis non*, of Spencer Carl-
ton, deceased, plaintiff in error, *vs.* William Davis, defendant
in error.

[1.] When the Court charged the jury on an assumption of facts which did not exist,
as where the court told the jury they might look *into the facts*, to ascertain
whether there had been a distribution of an intestate's property, when there was
*no evidence of any such distribution*: held, that such a charge to the jury was
erroneous.

[2.] An administrator *de bonis non* is only entitled *to recover* such goods and chattels
of the intestate, as remained in specie, in the hands of the former administrator,
unadministered, and capable of being identified as the property of the intestate.

[3.] Where an administratrix, in her individual capacity, sold a negro belonging to the
estate of an intestate, and delivered possession thereof to the purchaser: *held*,
that the possession of the purchaser was *adverse* to the title of the legal repre-
sentative of the intestate's estate; and that the statute of limitations would pro-
tect the purchaser.

Trover for a slave.   Tried on the appeal.   Before Judge Floyd.
In Monroe Superior Court.   March Term, 1847.

The action was brought by the plaintiff in error, against the
defendant in error, returnable to Monroe Inferior Court, December
Term, 1844.   The defendant pleaded the statute of limitations.

It appeared upon the trial, that the slave *Jim*, the subject of the
suit, was the property of the plaintiff's intestate, at the time of his
death, and came to the hands of Mildred Carlton, as his admin-
istratrix.

It appeared also, by proof of the admissions of the defendant,
that he purchased the negro Jim of the said Mildred Carlton, at
private sale; that he had consulted an attorney touching the title
to Jim, and that the attorney had given it as his opinion that Mrs.
Carlton's title was good, and that he determined to buy and risk it.
He gave six hundred dollars for the negro.

One of the witnesses testified, that the negro Jim was worth
*seven* hundred dollars, at the time of defendant's purchase.

The letters of administration *de bonis non* of plaintiff in error,
being submitted in evidence, he proved demand and refusal, in
1844, as evidence of conversion, and closed.

On the part of the defendant in error, the bill of sale from Mil-
dred Carlton to himself, conveying the negro Jim to him, in 1834,
was then submitted in evidence, and is as follows:

"Georgia, Wilkes County.   Received of William Davis, the

sum of six hundred dollars, in full, for the purchase of a negro man named Jim, about twenty-eight years of age; the right and title of said negro man, I do forever warrant and defend unto the said William Davis, against the claim or claims of any persons whatsoever. In witness whereof, I have hereunto set my hand and seal, this 9th December, 1834.                                         *her*

    Attest,                                         MILDRED ✕ CARLTON.
PHILEMON BIRD,                                         *mark.*
WILLIAM P. JONES."

After argument, the Court below charged the jury substantially as follows:

" This is an action brought by Isaiah Paschal, as administrator of Spencer Carlton, deceased, against William Davis, to recover the value of a negro man slave, named James, or Jim. The issue for you to try, is, whether, at the time this suit was commenced, this negro was the property of the estate of Spencer Carlton, deceased.

"It will be proper for you to consider all the facts and circumstances which have been developed by the evidence, to enable you to come to a satisfactory conclusion upon this question. You may look to the facts to ascertain whether Mildred Carlton, the widow of the deceased, had not appropriated this negro to her own use, as a portion of her distributive share of the estate of her deceased husband, and whether she did not (as such distributee) dispose of the said negro to the defendant. If you shall so believe, from the evidence, you will find for the defendant; for although the letters of administration to the plaintiff, are general in their terms, yet the evidence shows that he is only administrator *de bonis non*, and as such, he cannot claim or receive any thing, but those goods, chattels, rights and credits, which remain in specie in the hands of the former administrator unadministered, and are capable of being identified as the property of the first testator or intestate.

" The defendant relies, also, upon the statute of limitations. The statute of limitations commences to run as soon as there is adverse possession, provided there be a person in being capable in law to assert the title. In this case, Mildred Carlton, in January, 1823, became the administratrix upon the estate of her deceased husband, Spencer Carlton, and had possession of the negro till the 9th day of December, 1834, at which time she conveyed him, absolutely, to the defendant; Mrs. Carlton, still in life, and the sole representative of the estate. In the opinion of the Court, the title

and possession of the defendant became adverse, upon the sale to him, by Mildred Carlton, whether she sold to him as administratrix, or in her individual capacity. If, therefore, you believe the evidence, you will find for the defendant."

To which charge the plaintiff, by his counsel, excepted, and alleged that the same was erroneous.

1. Because the Court charged the jury on an assumption of facts, which plaintiff's counsel insists were not in proof, to wit: that the jury might look into the facts to ascertain whether Mildred Carlton, the widow of the deceased, had not appropriated the negro to her own use, as a portion of her distributive share of the estate of her deceased husband; whether she did not, as such distributee, dispose of the said negro to the defendant, when plaintiff's counsel insists that there was no evidence direct or presumptive, that there had been a distribution.

2. Because the Court erred in charging the jury that the plaintiff, as administrator *de bonis non*, could not claim or receive any thing but those goods, chattels, rights and credits which remained in specie in the hands of the former administrator, unadministered, and are capable of being identified as the property of the first testator or intestate; when plaintiff's counsel insisted that there could be no administration of land and negroes of the intestate, without an order of court for the sale, so as to place it out of the power of the administrator *de bonis non* to receive them.

3. Because the Court erred in charging the jury from the facts in proof, that the possession in the defendant became *adverse*, on the sale to him by Mildred Carlton.

McDonald for the plaintiff in error.

The defendant purchased at private sale, from the previous administratrix, knowing the negro to belong to plaintiff's intestate, and that administratrix was selling without an order of court. He set up this purchase in defence, pleaded the statute of limitations, and insisted that plaintiff in this case being administrator *de bonis non*, could not recover property sold by the previous administratrix.

The plaintiff contends that the sale, under the circumstances, did not pass the title.

In England it has been held, that if an executor or administrator alien the assets for his own use, in collusion with the vendee, such assets will be considered, at all events in equity, as unadministered,

Paschal, adm'r. *vs*. Davis.

and will consequently pass as such to the administrator *de bonis non.* *Williams on Ex.* 656.   In England the administrator had *authority* to sell unquestionably.   Though the authority cited says, " *at all events in equity,*" there can be no question that if the sale were fraudulent or collusive, it was void at law, for no title founded in fraud could pass.   But the grant of administration in this State does not vest the administrator to sell all the chattels of his intestate, as in England.   So far from it, our statute, which is controlling, declares that no administrator shall be allowed to sell any slave or slaves belonging to the estate of his intestate.   *Prince* 234.   Here is an express prohibition.   In such a case it is useless to reason or argue.   It is needless for the legislature to attempt to alter or change English law, if a prohibition so express, so unqualified, is to have no consideration.   It divests the administrator in express terms of all authority and power of sale, which he possessed prior to the enactment of the statute, in virtue of his grant.   If he sells then he can pass no title—the purchaser can acquire none.   He sells under such circumstances in violation of his duty.   His sale is a breach of trust.   Indeed this Court seems to have taken the same view of it in the case of *Thomas* vs. *Hardwick, ex'r.*   The Court in that case say : " To administer goods, then, is to alter, change, or convert them.   Where lands or negroes are sold by order of the Court of ordinary, or perishable property by the act of the *party* himself, they are administered so far as the successor is concerned."   The converse of this is true, and so the Court doubtless intended to be understood, that land and negroes sold without an order of court, are not administered so far as the successor is concerned.   With all the guards that the legislature has thrown around the estates of orphans, they are found too weak to encounter the tricks, artifices, and cupidity of evil-disposed administrators.

We maintain in the next place, that the sale by the administratrix to the defendant, being collusive, his possession was not adverse.   The administratrix was the only representative of the estate ; she sold without an order, and therefore without authority. It was known to defendant that the sale was without authority, and that the property belonged to plaintiff's intestate.   The administratrix, in making the sale, committed a breach of trust ; the purchaser, knowing the facts, was a party to the breach of trust. The statute of limitations does not therefore protect him.   *Adams on Ejectment; Atkins R.*

. This rule, founded in policy, morality and justice, should be particularly enforced in cases like this; otherwise, it would be a dead letter.

HAMMOND for the defendant in error,

Insisted that the Court below did not err in its charge to the jury.

The fact that the administration on Carlton's estate took place in 1823, and the sale by Mrs. Carlton eleven years thereafter, who was a distributee, was evidence to show that she held the negro as a distributee, though she originally acquired possession of him as administratrix. She was bound as administratrix to make distribution of the estate within two years, from aught that appeared to the Court; and the presumption that she had discharged her duty, was legitimate.

The statute of limitations having been plead, the only remaining question was, whether the possession of Davis was adverse. Mr. H. contended, that whether the estate was rightfully or wrongfully deprived of the negro by the sale, whether he was held by Mrs. Carlton as administratrix, or belonged to her individually, the verdict was right; because the defendant's possession in its inception, was hostile and adverse to the claims of all other persons. And so even, if his title commenced in fraud. The statute then commenced to run in favour of the defendant from his purchase of the negro in 1834; and having run, his title became perfect in a court of law, by adverse possession and lapse of time.

Even if his title had originated in fraud, this plea would protect him in a court of law, (*Angell on Lim.* 190,) unless by due diligence it could not have been discovered by the party affected by it, within time to sue.

*By the Court.*—WARNER, J., delivering the opinion.

On the trial of this cause in the Court below, these exceptions were taken to the charge of the Court to the jury, which are now assigned for error here. First. Because the Court charged the jury on an assumption of facts, which plaintiff's counsel insists were not in proof, to wit, that the jury might look *into the facts*, to ascertain whether Mildred Carlton, the widow of the deceased, had not appropriated the negro to her own use, as a portion of

her *distributive share* of the estate of her deceased husband; and whether she did not, as such *distributee,* dispose of said negro to the defendant, when plaintiff's counsel insists there was *no evidence* direct or presumptive that there had been a *distribution.*

The defendant claims the negro under a purchase from Mildred Carlton, who was the widow and distributee of Spencer Carlton. The plaintiff claims title to the negro as administrator *de bonis non* of Spencer Carlton, insisting that the negro is still the property of Spencer Carlton's estate, and has never been duly administered.

The Court below charged the jury that they might look into the *facts,* to ascertain whether there had been a distribution of the negro to Mildred Carlton, and whether she did not as such distributee sell the negro to defendant.

The charge of the Court assumes that there were *some facts* in [1.] evidence relative to distribution, or why direct the jury to *consider them?* If there was *no evidence* as to the question of distribution of the negro to Mildred Carlton, then we think the Court erred in submitting *that question* to the consideration of the jury; for it authorized them to indulge a presumption not warranted by the evidence. *Harris* vs. *Wilson,* 1 *Wend. R.* 511.

In *Harris* vs. *Wilson,* Sutherland delivering the judgment of the Court, says: " I think the judge erred in submitting it to the jury to determine, *upon the evidence before them,* whether the note had not been paid or satisfied by some arrangement between the parties previous to the arbitration. There was *no evidence from which any such conclusion could legitimately be drawn.*"

We are not able to discover from the record in this case, any evidence going to show there had been a *distribution* of the negro to Mildred Carlton, or which would authorize the jury, under the law, to presume it. Where there is *any evidence,* although it may be *weak,* the jury are unquestionably the proper judges of it, and it should be submitted to their consideration: but where there was *no evidence* to establish the fact of distribution, as in this case, we are of the opinion it was error to have submitted to the jury for their consideration, that which *did not exist,* as calling their attention to its consideration seemed to imply that, in the opinion of the Court, there was *some evidence* on that point which it would be proper for them to consider.

The second ground of error assigned to the charge of the [2.] Court below is, that " the Court erred in charging the jury, that the plaintiff, as administrator *de bonis non,* could not claim or receive

anything but those goods, chattels, rights and credits which remained in specie in the hands of the former administrator, unadministered, and are capable of being identified as the property of the first testator or intestate :" when plaintiff's counsel insisted that there could be no administration of land and negroes of the intestate, without an order of court for the sale, so as to place it out of the power of the administrator *de bonis non* to receive them. It does not appear from the record that the Court below was requested to charge the jury that there could be no administration of land and negroes in this State without an order of court, or that the Court expressed any opinion on that subject to the jury. We are to review the charge of the Court as given to the jury; for there is no exception that the Court refused to charge the jury on the subject of the order for the sale of the negro. Were the instructions given by the Court to the jury correct as to the law ? We think they were, and come fully within the rule established by this Court in *Thomas* vs. *Hardwick*, 1 *Kelly R.* 80. Whether an order of the Court of Ordinary was necessary to change the character of the property, so as to constitute an administration according to law, the Court below did not decide ; that Court instructed the jury what property of the intestate the administrator *de bonis non* was entitled to recover, which instructions, in our judgment, were properly given to the jury.

The third ground of error is, because the Court erred in [3.[ charging the jury, that the title and possession of the negro by the defendant, became adverse from the time of the sale to him by Mildred Carlton.

It appears from the record, that the negro James was the property of Spencer Carlton, at the time of his death ; that he died in 1822; and in 1823, his widow, Mildred Carlton, took out letters of administration on his estate. On the 9th December, 1834, Mildred Carlton, in her *individual* capacity, executed a bill of sale to the defendant for the negro James, for the consideration of six hundred dollars, who has had the possession of him ever since, claiming him as his own property. In the year 1843, the plaintiff, Paschal, took out letters of administration *de bonis non*, on the estate of Spencer Carlton; and on the 16th November, 1844, instituted his action of trover to recover the possession of the negro from the defendant, who pleads the statute of limitations. The plaintiff claims the negro as belonging to the estate of Spencer Carlton. Was the possession of the defendant, under his purchase

from Mildred Carlton, in 1834, *adverse* to the title of the plaintiff? We are of the opinion, that the possession of the defendant was adverse to the title of the representative of Spencer Carlton's estate, and that the Court below instructed the jury correctly on that point.

The sale was made by Mrs. Mildred Carlton, who had possession of the negro, to the defendant, for six hundred dollars.

The question is not now, whether Mildred Carlton, as the administratrix of Spencer Carlton, could have recovered the negro from the defendant as part of Spencer Carlton's estate, at any time within four years after the sale; if it was, we should be' of the opinion that she might have done so; but the question now is, whether the representative of Spencer Carlton's estate is not barred by the statute of limitations from recovering the possession of the negro from the defendant.    It is true, the sale was made to the defendant by Mildred Carlton; and it is also true, that Mildred Carlton was the legal representative of Spencer Carlton's estate; but the sale was not made by her as administratrix, it was made by her in her individual capacity; and the possession of the defendant was *adverse* to her title as administratrix, from the time of the sale in 1834. In *Liptrot, adm'r.* vs. *Holmes,* 1 *Kelly R.* 391, we said: " The action of trover being founded on a conjunct right of property and possession, any act of the defendant which *negatives* or is *inconsistent* with such right, amounts in law to a conversion."    The purchase of the negro by the defendant, from Mrs. Carlton, as her individual property, taking possession and exercising dominion over him as his own property, negatived, and was inconsistent with the title of Mrs. Carlton, as the administratrix of Spencer Carlton's estate; and the statute commenced running against the legal representative of that estate, from that time, in favour of the defendant.    The 'contract made by Mrs. Carlton with the defendant, for the sale of the negro, was binding on her in her individual capacity, but was not binding on her as the administratrix of Spencer Carlton's estate.    An administrator cannot bind the estate which he represents, by his contract.    *Toller Ex.* 133, 134; *O'Neal* vs. *Abney,* 2 *Bailey R.* 317; *Plant* vs. *McEwen,* 4 *Conn. R.* 544; *Doe, ex dem. of Hornby* vs. *Glenn,* 28 *Eng. C. L. R.* 33.    At the time of the purchase of the negro by the defendant, the estate of Spencer Carlton was represented by Mrs. Carlton, and she could have instituted her action as such representative for the recovery of the negro, and if she has failed to discharge her duty in that

regard, or has injured the estate by negligence or malfeasance, the persons interested in the estate have their remedy.

It has been urged by the counsel for the plaintiff in error, that inasmuch as the defendant purchased the negro of Mrs. Carlton, the trustee, with knowledge that he was purchasing *trust property*, the statute of limitations does not run, and cites the case of *Boteler* vs. *Allington*, 3 *Atk. R.* 459. That was a case in equity. In cases of fraud, courts of equity will sometimes hold, the conscience of the party being so affected, that he ought not to be allowed to avail himself of length of time; but in courts of law that principle does not, in our judgment, apply. Whether the statute will run in a court of law in cases of fraud, where there has been a *concealment* of the fraud, the authorities are somewhat in conflict; but there was no *concealment* here. If the sale was fraudulent as between Mrs. Carleton and the defendant, the fraud was known to her as the representative of Spencer Carlton's estate.

By our statute of limitations, actions of trover are to be commenced within four years next after the cause of such actions, and *not after*. *Prince* 575.

In *Troup* vs. *Smith*, 20 *Johns. R.* 47, Chief Justice Spencer, after pointing out the distinction between the plea of the statute of limitations in a court of law and a court of equity says : " But courts of law are expressly bound by the statute; it relates to specified actions, and it declares that such actions shall be commenced and sued within six years next after the cause of such actions accrued, and not after ; thus not only affirmatively declaring within what time these suits are to be brought, but inhibiting their being brought after that period. I know of no dispensing power which courts of law possess, arising from any cause whatever; and it seems to me, that where the legislature in the same statute gives an extension of time, in cases of the arrest or reversal of judgment, in cases of infancy, coverture of the feme, insanity, and imprisonment, and for an absence of the defendant out of the State when the cause of action accrued, that it would be an assumption of legislative authority to introduce any other proviso. The plaintiff's case may be a very hard one, but that affords no reason for construing away a statute of great public benefit, and which in many cases is a shield against antiquated and stale demands." In *Troup* vs. *Smith* it was held, that concealment of the fraud until within six years, would not prevent the operation of the statute, for the

very satisfactory reasons expressed by the chief justice in delivering the opinion of the Court. *Miles* vs. *Berry*, 1 *Hill S. C. R.* 296; *Gregg* vs. *Bigham, id.* 299. In *Gregg* vs. *Bigham,* it was held, that four years exclusive and adverse possession of personal property would give title under the statute of limitations, although the possession commenced *in fraud.* We think it is the duty of courts of justice to give such a construction to the statute of limitations as will prevent the mischief which that statute was intended to remedy, and not to create exceptions to its operation where the legislature has not created them. The view taken by Mr. Justice Story, of this statute, in delivering the opinion of the Court in *Bell* vs. *Morrison,* 1 *Peters R.* 360, meets with our entire approbation. He says : " It has often been matter of regret in modern times, that in the construction of the statute of limitations, the decisions had not proceeded upon principles better adapted to carry into effect the real objects of the statute ; that instead of being received in an unfavourable light, as an unjust and discreditable defence, it had received such support as would have made it what it was intended to be, emphatically a statute of repose. It is a wise and beneficial law, not designed merely to raise a presumption of payment of a just debt from lapse of time, but to afford security against stale demands, after the true state of the transaction may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses. It has a manifest tendency to produce speedy settlements of accounts, and to suppress those prejudices which may rise up at a distance of time, and baffle every honest effort to counteract or overcome them."

If we were to make the purchase of the negro by the defendant from Mrs. Carleton an *exception* to the operation of the statute, we should do that which the legislature have not thought proper to do, and to that extent virtually repeal it.

The following cases establish the principle, that the possession of slaves for a period analagous to that fixed by the statute of limitations, *under a claim of title,* not only operates to bar an action, but also to invest the possessor with the absolute property. *Sims* vs. *Canfield,* 2 *Ala. R. new series,* 561; *Brent* vs. *Chapman,* 5 *Cranch* 358 ; *Goodman* vs. *Munks,* 8 *Por. R.* 94; *Doyle* vs. *Bouler,* 7. *Ala. R. n. s.* 246.

The judgment of the Court below for the defendant was right, on the plea of the statute of limitations ; and we will not order a

new trial on the first ground of error taken, as that could not have influenced the verdict of the jury on the plea of the statute.

Let the judgment of the Court below be affirmed.