## J. M. CLAYTON, ADMINISTRATOR, *v.* JAMES P. BOYCE, EXECUTOR.

1. ADMINISTRATOR. *Of devisee's estate. Liability for debts of devisor.*
   Debts of a devisor, though chargeable on the land devised, do not become the personal debts of the devisee, and no decree therefor can be rendered against the administrator of the devisee's estate, even if it be made a charge upon the devised land.

2. SAME. *Liability on warranty of title to land partitioned.*
   The administrator of an estate of a decedent whose land has been partitioned between the heir thereof and a co-tenant is not liable for a breach of the heir's implied warranty of the title of the land allotted to his co-tenant.

3. SAME. *Liability for money not belonging to intestate.*
   An administrator who receives money not belonging to the estate of the intestate is not liable therefor to the owner thereof, in his representative capacity, unless the money be appropriated to the use of the estate.

4. HEIR. *Effort to charge his land. Money received by administrator.*
   Land descended to an heir is not chargeable with money received by the administrator and not belonging to the decedent, there being no privity between the heir and the administrator, and the only liability being upon the latter as an individual.

5. PARTITION. *Embracing land of third person. Right of tenant to reimbursement.*
   Where, after the partition of lands between tenants in common, it is discovered that a part of that allotted to one of the tenants belonged to a third person, and a part allotted to the other tenant had been previously sold for half its value as fixed in the partition proceedings, which had to be taken in payment therefor, the first-named tenant is entitled to reimbursement for one-half the value of the land allotted to him and owned by a third person, and the other tenant is entitled to reimbursement for one-half of the loss sustained on the land allotted to him and which had been previously sold.

6. SAME. *Whether res adjudicata as to title. Viewed as to party and as to third person.*
   A decree of partition is not *res adjudicata* that the title to the land divided was in the co-tenants (where it was, in fact, in a third person), but only that it was so recognized by them in that suit.
   Whether such decree would be *res adjudicata* where the title was in a party to the partition, *Quære.*

7. ACCOUNT. *Between parties to partition of lands. After lapse of many years. Showing required.*
   Where, many years after a partition of lands between co-tenants, one seeks an account as to the money received by the other during the co-tenancy, and by

reason of the lapse of time and the death of witnesses the evidence of the transactions has become obscure and doubtful, the court should not direct such account to be taken unless the complainant can make it appear that a fair and full statement may be made.

APPEAL from the Chancery Court of Lee County.

HON. BAXTER MCFARLAND, Chancellor.

The case is stated in the opinion of the court.

*W. L. Clayton*, for the appellant.

1. The first error insisted on in the decree is that in it appellant is charged with half the expense of J. W. Drane in attending the commissioners who partitioned the land in 1873. In Drane's account with Boyce he charges one hundred dollars for going with the commissioners who partitioned the land. The partition was made under the Code of 1871, §§ 1809 to 1843. The provisions of these sections nowhere provide for any pay for any one. The testimony shows that Drane was the agent of complainant, and, of course, he should have paid him for his services if he desired him to attend the commissioners.

2. The second ground of complaint against the decree is in charging appellant with one thousand dollars, alleged to have been received by E. Troup Randle, administrator of J. F. Carter, in Alabama. In relation to this one thousand dollars, Mary A. Randle says E. Troup Randle received two hundred dollars and five hundred dollars; the five hundred dollars was received in the early part of 1867 and the two hundred dollars about April, 1868, and knows nothing of her husband having received one thousand dollars.

E. Troup Randle says in 1867 James Drane sent him five hundred dollars and in the spring of 1868 two hundred dollars, and that is all he ever received, and he is positive and attaches a statement of account by Drane, showing the money received to September 25, 1868.

But if Carter's estate is chargeable with this one thousand dollars, is not Boyce chargeable with the one thousand dollars sent him, instead of only being chargeable with three hundred and fifty dollars? Boyce says Drane wrote him the money was for

Boyce, Boyce & Carter, and Boyce, Carter & McDonald, but how much for each he could not tell—but he took the lion's share. As *he* calls for the account, should he not be chargeable with the entire one thousand dollars until he shows how much of it really belonged to each party, as it was his agent who did the *mixing*, if any was done ?

3. The third objection to the decree is, that when the land was divided in 1873 between complainant and Mary A. Randle, complainant got · five hundred dollars more land in the allotment and valuation than Mrs. Randle, and the court refused to charge complainant with half that amount in this accounting.

But counsel says this is *res judicata.* When the decree of partition was reported, the report showed that Boyce had five hundred dollars more in land than Mrs. Randle, and the court entered a decree allowing complainant an attorney's fee of five hundred dollars and made the same a charge upon the land, and Boyce having paid it, it was decreed that he was entitled to that much more land in value than Mrs. Randle. It seems to me, therefore, that it resolves itself into the simple question, Had the court power before the Code of 1880 went into effect to allow an attorney's fee to be paid out of the common estate in partition suits? I know some of the Chancellors allowed it, and others refused it; I have had it allowed and refused. I never believed there was authority for it. If not, the order allowing it in this case was void, and if void, Boyce is chargeable with half the five · hundred dollars.

4. The fourth objection to the decree is that it did not charge appellee with half the difference between what the S. E. ¼ 28 and the N. E. ¼ 33, T. 9, R. 6, Lee County, were valued at by the commissioners of partition to Mary A. Randle and what was paid for the same by R. D. Logan. It will be remembered that these two tracts of land were allotted to Mrs. Randle at one thousand two hundred dollars. The testimony of W. L. Clayton and the bill filed by R. D. Logan show that these two tracts of land had been sold to one Jeptha Evans long before the partition for five hundred dollars, by James Drane, who was certainly agent for complainant,

and acted as such for Randle. Bond was given to Evans for title and the same transferred to R. D. Logan. The Carter estate gave one thousand two hundred dollars for these lands by the partition, which had been previously sold for only five hundred dollars, and which amounted to only six hundred and seventy-two dollars when Logan filed his bill for title.

The court, in settling the principles upon which the account should be taken, should have charged Boyce with half the difference between the price at which said lands were valued by the commissioners and the six hundred and seventy-two dollars paid by Logan for the same—that is, half of five hundred and twenty-eight dollars. When the court made a decree that Boyce should be paid for a tract of land allotted to him on account of failure of title, it ought certainly to have offset it *pro tanto* with failure of our title to the other two tracts above named, whether anything is said in the way of claim or not, if the fact appears by the proof.

*J. A. Blair*, for the appellee.

The debts growing out of the common estate here are charges upon it, and the legatee takes subject to these charges. What the legatee is entitled to is what remains after making both partners equal in receipts and in disbursements. This is plain. 1 Wash. 575; 4 Met. 537; 5 Met. 562 and 85; 2 Wash. 186 and 7.

1. The appellant was properly charged with half of the expense of J. W. Drane in attending the commissioners who partitioned the land. J. W. Drane, son of Colonel James Drane, deceased, succeeded his father in the agency. The lands lay in different counties. J. W. Drane was needed by the commissioners to point them out and give them general information. No testimony is introduced to show this allowance is wrong. That burden rests on appellant. This agency had existed for years, and Colonel J. W. Drane, by information from his father and personal knowledge, was peculiarly qualified to give the commissioners information as to the value of the different lands. The commissioners, citizens of Lee County, might be as well posted about the value of land in Lee County as Drane, but not so as to the land in the other coun-

ties. It was a proper thing for Drane to go, and it is an equitable charge. And again, Colonel Drane testifies that Randle wrote him to see that his wife's interest was not injured. This made him the agent most clearly of Randle and wife, and it run through the whole of the partition proceedings, and what he did was left wholly to his directions.

2. The five hundred dollar counsel fee allowed Clayton & Clayton for filing the partition bill and conducting the proceedings was paid them in cash by complainant's testator out of his own means, and he was reimbursed by an allowance of land in his favor of that much.

Of course, the five hundred dollars paid by him was half his debt, and he therefore paid two hundred and fifty dollars only for Randle, and half the five hundred dollars' worth of land received in excess was his, and therefore he only received of Randle two hundred and fifty dollars' worth of land. It has already been attempted to be shown that Drane was Randle's agent in this partition suit. It is admitted he was a party to this suit. He then knew of this arrangement. Seven or eight years elapsed before the commencement of this suit and no objection is heard to this mode of paying the attorney's fee in the partition suit.

It was for their mutual benefit, and made necessary in a great degree by the condition of the interest Mr. Randle represented— unquestionably it was and is a mutual charge. It has been adjusted and allowed. Any objection to it is certainly barred.

But Mr. Clayton says he never thought such an allowance legal.

Does he mean that, being the only attorney concerned in this case, he permitted the court to make in his favor an allowance which he knew to be illegal? If that is the case, then Mr. Clayton ought to assume personally, and without delay, the liability for the error.

And again, *this is res adjudicata.* Randle and wife were parties to this partition suit. They made no exceptions to any of the proceedings, and it cannot now be attacked collaterally and set aside in this proceeding. Herman on Estoppel, § 89, latter part; *Kane* v. *Rock River Co.,* 15 Wis. 179 ; *Secrist* v. *Green,* 3 Wallace 744;

*Clemens* v. *Clemens*, 37 N. Y. 50–74 ; *Blakeley* v. *Culder*, 15 N. Y. 617.

3. The next assignment of error is for charging Mrs. Randle with the one thousand dollars sent her by express on the ——th day of January A. D. 1869.

On this point the first question to be considered is, Was the money so sent ?

There is the entry on the book, and this entry is strengthened very materially by the fact that at the same time he sent James P. Boyce the same amount, thus keeping up the general habit of sending equal amounts to each party. But appellee, representing more interests than appellant and furnishing more money, fell behind appellant in his receipts.

And again, there is the most positive testimony of James W. Drane to the fact that he sent it by express himself, also the testimony of Mrs. Drane on the same subject.

The money was certainly sent. Who, then, should bear the loss? Negligence cannot be charged against the agent. He has relieved himself most clearly by due diligence. He should bear the loss to whom the property belonged.

When the money was separated by the agent, one thousand dollars for each and consigned to each and receipts taken, whether the remittance was by draft, through the mail, or by express, the property became that of the consignee.

Ker Boyce ceased to have any property, interest, or legal ownership in the money sent Randle or Carter, and *vice versa,* so soon as the draft was deposited in the mail or the money received by the express company, *and so soon as divided.* Such a delivery was a delivery to the consignee, and the property vested in him as clearly *then* as when actually delivered afterward into his hands.

It was not subject to Ker Boyce's debts; it could not be delivered to him ; he had no control over it of any kind.

4. It is also assigned for error that the court failed to charge appellee with half of the loss sustained by appellant, because of the difference between the value of a certain tract of land allotted to Mrs. Randle and the price for which it had been sold.

Appellant contends that it was sold for less than it was valued at and that complainant should account for half the difference. *The* TITLE HAS NOT *failed.* The sale is ratified, and all that can be done has been done—accounting to appellant for the money. Ker Boyce or his representatives did not warrant the value of the land, or that it was worth one thing or another, or what it would sell for, but warranted only the title.

Partitioners are warrantors of the title to each, but not of what the land is worth. This is not a breach of any obligation or contract existing between these parties. If the land was sold at the time it was allotted to Randle for a less sum than it was valued at by the commissioners, this objection ought to have been made in the partition suit, and it is too late to raise it now.

COOPER, J., delivered the opinion of the court.

The material facts of this case are, that prior to the year 1854 Ker Boyce, the testator of the appellee, and Farish Carter were the owners of several tracts of land situated in the counties of Lee, Itawamba, Pontotoc, Lafayette, and Tate, and that one James Drane was the agent of the owners and authorized by them to make sales for cash or on credit. Drane made a number of sales, partly for cash and partly on credit, and from time to time remitted to his principals the proceeds received by him.

In 1854 Ker Boyce died in the State of South Carolina testate. By his will, which has been duly probated in this State, the appellee was appointed executor.

In the year 1861 Farish Carter died in the State of Georgia testate, and by his will devised all the lands owned by him in this State to J. F. Carter, who died in the State of Alabama in the year 1866, and on whose estate E. Troup Randle was appointed administrator by the proper court in that State. Mary A. Randle, the wife of this administrator, was the sole heir at law of J. F. Carter.

James Drane, the agent of the parties, died in 1869, and his place as agent, so far as Boyce, executor, was concerned, was thereafter filled by his son, J. W. Drane. It appears that after the death of J. F. Carter, James Drane applied to E. Troup Randle,

the administrator of his estate, to be appointed agent for the estate as to these lands, and after the death of James Drane, J. W. Drane also made a similar application, to both of which the administrator replied that he had no authority to appoint an agent; that there was litigation pending touching the devise of the lands made by the will of Farish Carter, and until that could be settled it could not be told who was the owner of the lands, but that if it should be determined that Mrs. Randle owned them, then she would consummate any sales which might be made. In a communication made by the elder Drane to Mr. Randle, in the year 1868, it appeared that he had in his hands the sum of eighty-one dollars and sixty-five cents, which he had received from previous sales, and that probably other sums would be received (at least Mr. Randle seems to have inferred that such other collections would be made), and as the lands were not producing any income, Randle directed Drane to pay the taxes on the lands from such collections, and also stated that in any event any taxes paid out by Drane should be refunded to him.

In 1873 Boyce, executor, directed Drane to employ counsel and to cause a bill to be filed for a partition of the lands, which was done, and on the petition thus filed a decree was made partitioning the lands between Boyce, the complainant, and Mrs. Randle. By this petition no account was asked of the money which had been distributed by the agent, Drane, nor of the expenses incurred and discharged by the complainant in paying taxes on the lands, etc. In the decree for partition it was provided that since Boyce had engaged the attorneys who had conducted the proceedings, and had become personally liable to them for their fee of five hundred dollars, he should be allotted lands of that value in excess of those allotted to Mrs. Randle, and this was done. The commissioners appointed to make partition valued each tract of land, and among other lands awarded to Boyce was the southeast quarter of section 8 of township 9 of range 6 in Lee County, which was valued at the sum of two thousand dollars. Among the lands allotted to Mrs. Randle was a tract composed of the southeast quarter of section 28 and the northeast quarter of section 33, in township 9

of range 6, east, in said Lee County, which tract was appraised at
the sum of one thousand dollars.

In the year 1881 Clayton, the appellant, was appointed admin-
istrator of the estate of J. F. Carter in this State by the Chancery
Court of Lee County.

The present bill was exhibited against this administrator, and
after stating the foregoing facts the complainant charged that
Farish and J. F. Carter in their respective lives, and since the
death of J. F. Carter that Mrs. Randle and her husband, E. Troup
Randle, as administrator of the estate of J. F. Carter, had received
more than an equal proportion of the money realized from the
sales of the lands made by Drane, and that the complainant had
expended considerable sums in the payment of taxes on the lands
and in employing counsel to protect the property against adverse
claims, none of which had been refunded by his co-tenants. He
charged that the southeast quarter of section 8, township 9, range
6, in Lee County, which had been allotted to him in the partition,
and which was valued by the commissioners at the sum of two
thousand dollars, had never been the property of Boyce & Carter.
He prayed a decree against the administrator of J. F. Carter for
one-half of this sum with interest from the date of the partition,
and for an account to be taken of the amounts received and
expended by the owners prior to the partition, and that he might
have a decree against the administrator for any sum found due to
him, to be fixed as a charge on the land which had been allotted
to Mrs. Randle.

The administrator answered, denying liability to account or that
a decree could be rendered against him on the facts stated. Neither
Mrs. Randle nor E. Troup Randle were made defendants to the
bill; but there appears in the record an agreement that they may
adopt the answer of the administrator, adding thereto a denial of
the reception by them or either of them of any other funds from
Drane than those admitted by Clayton as having been so received.
No such answer appears in the record, nor was the bill amended so
as to make them defendants. On final hearing a decree was ren-
dered against the administrator for the sum of two thousand four

hundred and two dollars and thirty-one cents, which was declared to be a charge on the lands which had been allotted to Mrs. Randle in the partition suit.

In stating the account, the commissioner charged against the estate of Carter fifty dollars, being one-half of the sum charged by J. W. Drane for his services in attending upon the commissioners by whom the land had been divided under the decree for partition, and also the sum of one thousand dollars, which it appears was expressed by James Drane to E. Troup Randle in the year 1869. On the same day on which this remittance was made to Randle, a like sum was remitted to Mr. Boyce, but exactly what part of this sum was intended by the agent, Drane, as a distribution of the funds of Boyce & Carter, does not appear. In his letter Drane instructed Boyce to credit the sum to his account as agent of Carter & Boyce, and of Boyce, Carter & McDonald, and of Boyce as executor of Ker Boyce, all of whom had lands in this State for the sale of which Drane was the agent.

It seems from the briefs of counsel that the proceeding has been carried on as though Mrs. Randle and her husband had been made defendants to the bill, but they are ignored in the final decree, and we infer do not join in this appeal, which is prosecuted without any petition for appeal or bond. As the decree must in any event be reversed, we have considered it as though Mrs. Randle was a party to it, because such seems to have been the understanding in the court below, and for the further reason that by so doing we can dispose of the questions really involved, and thus avoid the necessity of a future appeal.

On the facts shown no decree should have been rendered against the administrator.

It does not appear that Farish Carter in his lifetime received more than his share of the funds arising from the sale of the common property, and if this did appear it would not afford ground for a personal decree against the administrator of J. F. Carter, for the debts of Farish Carter, though chargeable on the lands which he devised to J. F. Carter, did not by such devise become the personal debts of J. F. Carter, and only for such

debts can a personal decree be rendered against the personal representative.

Nor is the decree made valid by the fact that it charges the amount found due on the lands, for in them the administrator is not interested in that sense that a decree may be made fixing a charge on them in his hands. It is true that in case there is a deficiency of personal assets the lands may be dealt with as assets, but the administrator is not owner and has no sort of connection with them relative to claims which may be charged on the lands, but not on the general estate.

If the partition had been made in the lifetime of J. F. Carter and between himself and Boyce, then Carter's implied warranty of title to Boyce would have been a personal obligation, for breach of which an action might have been had against Carter if living and against his administrator after his death. But the partition was made not between Carter and Boyce, but between Boyce and the heir at law or devisee of Carter, Mrs. Randle, and for a breach of Mrs. Randle's warranty the administrator of Carter is in no wise liable.

The account, which was taken, does not show that J. F. Carter ever received one dollar from the proceeds of the lands. No distribution of the money was made by Drane from 1860 to 1867. In the former year Farish Carter was alive, and in the latter J. F. Carter was dead.

Neither the administrator in this State nor the lands in the hands of Mrs. Randle can be charged with the thousand dollars said to have been sent by Drane in 1869 to E. Troup Randle, the administrator in Alabama. That administrator had no authority to receive anything other than the money of the estate of his intestate. If he received more than this he is responsible as an individual, but not in his representative capacity, unless it be also shown that the money was actually appropriated to the use of the estate, and of this there is no proof. For the same reason that the administrator here is not liable, Mrs. Randle's lands are not. There is no privity between the heir and the administrator, and he cannot charge the lands in the hands of the heir. If the money

received by him had been appropriated to discharge a claim which bound the land, then it might have been reached under the doctrine of subrogation, but, as we have said, there is no proof of such facts.

Mrs. Randle should not have been charged with the half of the one hundred dollars. This charge seems to us to be one which the agent might well have made against his principal, Mr. Boyce, whom he was representating in the partition proceedings, but there was no such relation existing between Mr. Drane and Mrs. Randle, and to charge her with a part of this sum would be to compel her to pay for services neither authorized nor knowingly received. The fee of five hundred dollars paid by Boyce to the attorneys who procured the decree of partition having been allowed in that suit and settled is *res adjudicata*, and is removed from the field of litigation.

Under the same principle which authorizes Boyce to call upon Mrs. Randle to refund one-half of the value of the lands allotted to him, the title of which was in other parties, Mrs. Randle has the right to be reimbursed for one-half of the loss she sustained by the fact that the land allotted to her at one thousand dollars had been previously sold by the owners for five hundred dollars, which sum she was forced to accept as payment in full of the land. The decree of partition is not *res adjudicata* that the title to the land divided was in the co-tenants, but only that it was so recognized by them in that suit. We speak, of course, with reference solely to cases in which it appears that at the time of the partition the title was in a third person not a party to the suit. Whether one of the parties to a partition can, after partition made, set up an adverse claim in himself which existed at the time of the decree is a totally different question.

There was no evidence before the court or the commissioner on which it was proper to charge against the complainant only three hundred and fifty dollars of the one thousand dollars remitted to him by Drane in January, 1869. The complainant calls upon the defendant to account touching the money distributed by the agent. He has neglected to propound his claim through many years, and by reason of the lapse of time and the death of parties, the evi-

dence of the transactions has become obscured and doubtful. Under these circumstances, while the court will not refuse its aid, it can be invoked only upon the theory that it is still possible to arrive at a proper result. The court will not direct an account to be taken when it is certain that only a part of the items can be taken into consideration because of defect of proof when, as in this case, the party moving in the matter has been guilty of negligence and *laches*, and by reason of the delay which has intervened may gain an advantage over his adversary. It devolves upon the complainant, who comes after the lapse of so many years seeking to have a statement of accounts, to satisfy the court that a fair and full statement may be made.

*Decree reversed.*