## W. H. DICKERSON v. LEWIS T. THOMAS.

1. CANCELLATION.   *Accounting.   Books.   Evidence to contradict.   Estimates.*
   An uneducated negro filed a bill to cancel a conveyance of his plantation, made to a merchant in settlement of a large balance, claimed by the latter to be due upon a final settlement of mutual accounts covering a period of six years. He alleged fraud in its procurement and usury in the account. The conveyance was set aside and the account restated by a master. The complainant was allowed credit for a large amount of cotton not credited, the evidence to sustain this being the estimates of witnesses as to the yield of the place for each year, based on the acreage and general character of the crops as being good, fair, or bad etc., and statements that the cotton was for the most part delivered to defendant. *Held*, that such evidence was too indefinite and uncertain to falsify balances shown by the merchant's books, and settlements which were made from time to time based on them and acquiesced in by the parties.

2. SAME.   *Landlord and tenant.   Course of business.*
   Where on such accounting it appears that the separate accounts of complainant's tenants and croppers had been charged to his account and had been carried into the settlements and notes executed for the balances due, it was error to disallow such items for lack of positive evidence of a contract by complainant to pay them, it being shown that such charges were in keeping with the usual course of business between the land-owners and their tenants.

3. ACCOUNTING. *Reopening settled accounts. Burden of proof. Evidence.*
    The burden of proof rests on the party seeking to reopen such an account, long ago closed by note, and upon which payments had been made,, to show errors or omissions by direct and specific evidence. It is not sufficient to raise a suspicion that the account is incorrect in certain particulars, but facts must be shown in the light of which the court may act with confidence and intelligence. *Clayton* v. *Boyce,* 62 Miss. 390.

4. USURY. *Executed contract. Suit to recover back.*
    Notwithstanding § 1141, code 1880, which provides that "if a greater rate of interest than 10 per cent. shall be stipulated for in any case, all interest shall be forfeited," if a contract for the payment of usury has been executed, only the excess of interest over the legal rate can be recovered back. *Bond* v. *Jones,* 8 S. & M. 368, distinguished.

FROM the chancery court of Coahoma county.

HON. W. R. TRIGG, Chancellor.

The facts as found by the court from the very voluminous record are stated in the opinion.

*Calhoon & Green,* for appellant.

1. It was necessary for the complainant seeking to reopen the settled account to specify facts that might be put in issue, and the evidence to prove errors should be positive. *McLoskey* v. *Gordon,* 26 Miss. 270; *Calvit* v. *Markham,* 3 How. (Miss.) 343; *Hunt* v. *Gordon,* 52 Miss. 197; 1 Daniel Chy. Pr., 668, 371; *Kilpatrick* v. *Harrison,* 61 Ala. 492. Not having done this no proof as to errors was competent.

2. Where a bill in equity asks a forfeiture of usury, there must be an offer to pay the amount really due. *McRaven* v. *Forbes,* 6 How. (Miss.) 569; *Norcum* v. *Lum,* 33 Miss. 301. In the latter case the court disapproves *Parchman* v. *McKinney,* 12 S. & M. 636, which seems to announce a contrary rule. In *Parchman* v. *McKinney* the court lays stress on the particular facts in evidence and makes no reference to *McRaven* v. *Forbes.* In *Long* v. *McGregor,* 65 Miss. 70, the rule announced in *Parchman* v. *McKinney* is followed, although criticised, but the contrary opinion announced in *Norcum* v. *Lum,* which virtually overruled that case, was not ad-

verted to by the counsel or court.    See also *Deans* v. *Robertson,*
64 Miss. 195.

3. When an illegal or usurious contract has been executed, the
consideration cannot be recovered back.    *Parchman* v. *McKinney,*
*supra,* citing 1 Comyn Contracts ; *Woolfolk* v. *Bird,* 22 Minn. 341 ;
*Quinn* v. *Boynton,* 40 Iowa, 304 ; *Hadden* v. *Innes,* 24 Ill. 381 ;
*Pitts* v. *Cable,* 44 Ib. 103 ; *Williamson* v. *Cole,* 26 Ohio St. 207 ;
*Rutherford* v. *Williams,* 42 Mo. 38 ; *Ransom* v. *Hays,* 39 Id. 445.
A borrower may pay a usurious debt or pay it by assignment, and
neither the creditors nor borrower can complain.    *Green* v. *Morse,*
4 Barb. 332 ; *Murray* v. *Judson,* 9 N. Y. 73 ; *Fielder* v. *Varner,*
45 Ala. 429.    The creditor may apply payment to usurious debt.
*Robinson* v. *Allison,* 36 Ala. 525 ; *Treadwell* v. *Morse,* 34 Mo. 112 ;
*Dorsey* v. *Wayman,* 6 Gill, 59 ; or to a debt illegal and forbidden
by criminal law.    *Phillpot* v. *Jones,* 2 Ad. & E. 42; 29 E. C. L.
25 ; *Crookshank* v. *Rose,* 5 C. & P. 19, 24 E. C. L. 194 ; *Carra-*
*dine* v. *Wilson,* 61 Miss. 577 ; *Tupelo* v. *Beard,* 56 Ib. 536 ; *Jack-*
*son* v. *Newman,* 59 Ib. 385.    The code of 1871 provided for such
forfeiture *on the plea of the party to be charged.*    This means that
the forfeiture can be obtained only where it is sought to charge one
not after the contract is executed.    While the code of 1880 does
not use this language, it being more incisive, the intent is clearly
the same.

The foundation of the contrary rulings in this regard is the
opinion in *Bond* v. *Jones,* 8 S. & M. 368 ; but we submit that it
rests upon erroneous conception of the opinion and the facts of that
case.    While a judgment was involved, the transaction was after
its rendition and in reference thereto, and was *in fieri* and execu-
tory.    There was no reference to the difference between executed
and executory contracts.    Nor was the question considered in
*Chaffe* v. *Wilson,* 59 Miss. 42 ; nor in *Boyd* v. *Warmack,* 62 Ib.
536 ; nor in *O'Connor* v. *Ward,* 60 Ib. 1025 ; *Rank* v. *Fraser,* 63
Ib. 234 ; and *Roselle* v. *Dickerson,* Ib. 538.    The last two were
cases of executory contracts.    We submit, therefore, it was error
to permit a recovery of the excessive interest after the transaction
was fully closed.

(Counsel discussed at great length the evidence, contending that it was vague, uncertain and indefinite, and that the result reached by the master was shocking to the conscience, and should not stand.)

*D. A. Scott,* on same side.

*Cutrer & Cutrer,* for appellee,

Filed a very lengthy and exhaustive written argument upon the facts of the case and the legal questions involved, and as to the matters disposed of by the opinion made the following points :—

1. Where either fraud, mistake or undue advantage is shown to have been the cause for any part of a grant or contract, the court will set aside the whole.   2 White & Tudor's Leading Cases in Eq., 1259 ; *Bunch* v. *Shannon,* 46 Miss. 525 ; *Simonton* v. *Bacon,* 49 Ib. 582 ; *O'Conner* v. *Ward,* 60 Ib. 1025 ; 2 Pom. Eq., 928, 948 ; *Blackwilder* v. *Loveles,* 21 Ala. 371.   It was proper to re-state the account.   1 Story Eq. Jur., § 523 ; 1 Daniel Chy. Pr., 668, note 6, 983.

2. The master's report having been approved by the court, his findings will be treated in the same light as a verdict of a jury, and no objections not specifically made in the lower court will be considered.   *Williamson* v. *Downs,* 36 Miss. 402 ; *Fowler* v. *Payne,* 52 Ib. 210 ; *Foster* v. *Gressett,* 29 Ala. 393 ; 2 Daniel Chy. Pr., 1298, 1299, 1315.

3. The ingenious argument of counsel that usurious interest cannot be recovered back on an executed contract, is not of very great force in the light of the well-established rule in this state on that subject.   *Bond* v. *Jones,* 8 S. & M. 368 ; *Coulter* v. *Robertson,* 14 Ib. 18 ; *McAllister* v. *Jerman,* 32 Miss. 142 ; *Chaffe* v. *Wilson,* 59 Ib. 42 ; *Polkinghorne* v. *Hendricks,* 61 Ib. 366 ; *Boyd* v. *War-mack,* 62 Ib. 536 ; *Bank* v. *Fraser,* 63 Ib. 231 ; *Grayson* v. *Brooks,* 64 Ib. 410.

But it is unnecessary to discuss the question here, because the executed contract referred to has been set aside for fraud and the *status quo* is fully restored, and the contract now being executory, relief will follow as of course, without any tender of legal interest. *Long* v. *McGregor,* 65 Miss. 70.

There is no error in the decree of cancellation, and equity demands that this much of the final decree be affirmed and appellee restored to the possession of his realty. If there be errors in particular items, the correction should be applied here only to those that are erroneous, and the whole matter should not be reopened to be proceeded with *de novo*.

COOPER, J., delivered the opinion of the court.

The appellee exhibited his bill in this cause to cancel a conveyance made by him to appellant of a certain plantation and personal property, upon the ground that the same was obtained by the fraud of the grantee, and because of the usurious character of the consideration cited therein. Shortly stated, the averments of the bill are that appellant is a shrewd, designing white man, and appellee is an illiterate and confiding negro, who has through many years dealt with appellant, who was his merchant; that appellee, having confidence in the friendship and honesty of appellant, relied upon him to keep accurate accounts of their transactions, making only proper charges against him, and giving him credits for all payments or other matters to which he was entitled; that from year to year he bought goods of appellant, delivering to him large quantities of cotton to be credited on his account; that from time to time appellant would state to him the balances due, and cause to be prepared deeds of trust upon appellee's farm and personalty as security, and appellee, relying upon the accuracy of the balances claimed to be due, would execute the instruments as requested; that in January, 1884, the last security of the series was executed by him, whereby he granted to a trustee the lands in controversy in this suit to secure the payment of a note recited therein to be then given for $8034.20; that in December, 1887, the appellant went to the residence of appellee and informed him that he (appellee) had become very obnoxious to his white neighbors, who, because of his ownership of property to a considerable amount, were unwilling for him to reside among them, and that some of them had written to appellant, warning him to close out his business with appellee, extracts from which letters appellant

then professed to read to him, and he represented that it was dangerous for appellee to longer remain in that vicinity, and that appellant felt himself called on, in the interest of all parties, to have a settlement of their affairs; that appellant claimed that the sum then due was about $13,000, and that he had come prepared to seize the personal property under his deed, and to cause the real estate to be sold under the power of sale conferred by the deed of trust, unless a satisfactory settlement could be made; that he preferred an amicable settlement, and, if appellee would execute a conveyance in fee of the lands, and all personalty covered by the securities, and deliver up possession thereof, he (appellant) would give to appellee the sum of $2000 in money, and two good mules and a wagon; that he reminded appellee that, if the property should be sold under the deeds, it might not bring the amount due, and appellee would be thus left penniless, and probably with a large debt hanging over him; that appellee, relying upon the good faith and the truth of the statements made by appellant as to the condition of the accounts between them, executed the conveyance of his property as required, and delivered to the appellant the possession thereof; that appellant, soon after the execution of the conveyance by appellee, repudiated his promise to give him the $2000, or the mules and wagon, and denied that he had made any such promises. The bill further charges that in fact complainant was not indebted to the defendant in any such sum as he had claimed; that the debt claimed consisted largely of excessive and usurious interest, and of illegal and unwarranted items wrongfully charged against him; that the debt, if purged of such usury and erroneous charges, would be very greatly reduced in amount; that, in addition, complainant was justly entitled to large credits upon said debt for cotton delivered to defendant, and which had not been credited on his accounts, and also for work and labor done, and money laid out in the improvement of a certain farm of the defendant by the complainant; that complainant, at the time of executing the deed sought to be cancelled, supposed that the defendant had properly credited his demands with these payments and items, and relied upon the defendant's statement that the balance due was over $13,000; that in

truth no such threatening letters had been written to the defendant about the complainant as defendant professed to read to him, but that defendant had falsely asserted their existence, for the purpose of arousing his fear and apprehension, of rendering him anxious to get out of the neighborhood, and therefore willing to close with defendant's proposition of settlement. The prayer of the bill was for cancellation of the deed, for a statement of accounts between the parties, purged of usurious interest and of illegal charges, and credited by all sums to which the complainant might appear to be entitled, and which had not been extended by the defendant.

The defendant answered the bill, denying all the material allegations thereof charging fraud and misconduct on his part except as to the matter of usury, which the answer admitted had been to some extent charged ; but the defendant insisted that the conveyance was freely and voluntarily made by the complainant, without any of the fraudulent misrepresentations or conduct charged against defendant. He denies that on final settlement he stated to the complainant the amount of his indebtedness to him, but avers that, in consideration of the conveyance, he surrendered all claims against the complainant, and that, exclusive of usurious interest, there was more due than the value of the property.

A mass of testimony was taken by the parties, and on final hearing the court decreed cancellation of the conveyance, and directed an account to be stated between the parties. The cause was referred to a commissioner, with instructions as to the principles upon which the account should be stated ; and, he having reported that there was due complainant the sum of $12,291.02, a decree was rendered in his favor for that sum, from which decree the defendant prosecutes this appeal.

The astonishing result reached by the commissioner and approved by the court, whereby the complainant, who believed himself to be indebted to the defendant in a sum exceeding $13,000, and conveyed his entire estate in discharge of the debt, is restored to the ownership of the property, and secured a decree against his supposed creditor for nearly the sum he claimed from complainant, demonstrates the necessity of adhering to that rule of judicial pro-

ceeding which requires definite and specific evidence for the establishment of facts. The result reached has been arrived at by allowing many large credits claimed by the complainant, and by striking from the accounts many items which had for years been treated by the parties as proper debits against him. If the credits allowed were supported by competent and sufficient evidence, and the debits disallowed were properly disproved, the mere fact that a result so opposed to common experience has been reached should not affect the right of appellee to retain the benefit of the decree. The evidence on both branches of the investigation is wholly insufficient to warrant the decree rendered. The testimony tending to establish the additional credits to which appellee has been found entitled is of the most indefinite and inconclusive character. It consists largely of estimates of the quantity of cotton grown by the complainant from year to year, and general declarations by him and his witnesses that the crops were for the most part delivered by him to the defendant. The volume of testimony is too great to permit us to examine its details in a written opinion, extending, as it does, to complicated transactions running through a series of years. We have neither the time nor the inclination, nor is it our duty, to perform the office of commissioner of accounts, and attempt to disentangle the confusion of books and statements which are presented in the record. The original mercantile books of appellant have been made a part of the record by agreement of counsel; and these, with accounts rendered and stated, accounts of sales of cotton, accounts stated by experts and commissioners, and hundreds of pages of vague and indeterminate testimony, so confuse the controversy as to render it incapable of accurate and definite solution. The complainant has received each year during the period covered by his dealings with the defendant, credits for cotton delivered by him from time to time. These credits appear on the books of the defendant. The complainant contends that, beginning with the year 1878, there were each year delivered to the defendant many other bales of cotton, for which no credits were given. To establish these credits, he proves that he had a certain number of acres planted to cotton in 1878, another number in 1879, another in 1880,

and so on up to and including the year 1885; that his crop was a
good one in a certain year, a fair one the next, a poor one another,
etc.; that he ought to have made, and according to his recollection
did make, so many bales of cotton one year, so many another, etc.;
that his custom was to deliver the principal part of his crop to the
defendant each year, and if he did make and deliver the cotton he
believes he did, then he should have credit for a certain (or uncer-
tain) number of bales not credited by the defendant. In some in-
stances more specific testimony is adduced, but it is manifest that
the greater portion of the additional credits secured in the account-
ing are supported only by this sort of indefinite and uncertain
evidence. We find it impossible to apply such evidence to any
particular credit allowed by the commissioner; but where the testi-
mony becomes specific and definite, it is not difficult to show that
the additional credits sought and secured already appear on the
books of the defendant. We will take as an example the addi-
tional credits of cotton claimed and allowed for the year 1878.
The complainant is credited on the books of the defendant with 26
bales of cotton of the crop of 1878, delivered after March 26th,
and before May 26th. The complainant claimed and received
credit for eighteen other bales which the commissioner states, the evi-
dence shows were delivered, and not credited. It is not difficult to
discover the testimony on which this credit was allowed. The com-
plainant turned his books and papers over to one Wildeberger, an
expert, to state his account for him, and caused Wildeberger to be
examined as a witness. Among other *data* furnished to Wilde-
berger by complainant were certain accounts of sales of cotton
furnished to complainant by the defendant. Of these there was
one for the sale of one bale of cotton sold by Porter, Taylor & Co.,
May 20, 1879; net proceeds $54.42. Another was account sales
by A. C. & A. B. Treadwell & Co., of thirteen bales of cotton sold
May 26, 1879; net proceeds $659.11. The testimony of these
merchants show, and it is conceded by the defendant, that the pro-
ceeds were paid over to Dickerson for account of complainant. In
making out his account, Wildeberger gave complainant additional
credits for these sums, and on his examination stated that they had

not been credited on the books of the defendant. He also testified that the complainant was entitled to an additional credit of three bales of cotton, and the value of a remnant of a bale; all of which appeared as noted on the books of defendant, but the value was not extended as credit. He also stated that probably credit for one other bale of cotton should be given. It thus appears that complainant, through his expert accountant, claimed credit for seventeen bales of cotton, and a part of another bale. The commissioner allows a credit for eighteen bales, but we are unable to discover from whence the additional part of a bale is derived. Turning to the books of the defendant, we find the complainant credited on May 20th with precisely the sum of $54.42, the price of the bale sold on that day by Porter, Taylor & Co., and for which additional credit is given. On May 26th there appears a credit of $659.11 as the proceeds for thirteen bales of cotton, and this is the exact sum for which the thirteen bales were sold by A. C. & A. B. Treadwell on that day, as shown by their account of sales. We are unable to conjecture upon what theory it was supposed that the credits given by the defendant represented other cotton. The dates of sales and of credits, the number of bales sold, and the price for which they were sold, correspond with such minute exactness that it is impossible to resist the conclusion that the additional credits allowed are mere duplicates of those already appearing on the books of the defendant.

We have not the time to follow the testimony through the whole series of years. We can only call attention generally to other matters in which errors have been committed. It appears that complainant had, during the years in which he dealt with defendant, a number of tenants and share hands, who were also customers of defendant. The accounts of many of these persons appear charged against the complainant in a lump sum, a portion of which were disallowed by the commissioner because of lack of evidence to show a contract on the part of the complainant to pay them. It is shown that the course of business was for these tenants or croppers to deliver cotton to complainant, to be by him applied to the discharge of their accounts. The testimony, we think, shows that the transactions were about those which usually are had between

the owner of a plantation and the tenants or croppers on his place. The accounts appear charged to the laborers. At the end of the season the cotton of the laborers is taken by them directly to the merchant, and sold in payment of the debts due him, or the landlord assumes the accounts, and collects the sums due by his employés or tenants. Evidently, that was the course followed between these parties in many cases. The cotton credited to him must have been largely derived from his tenants and employés, and intended to be applied to the payment of their accounts. If this were not true, why was it that complainant permitted these accounts to be charged against him, and paid by the application of his credits to them, or carried forward in notes executed for balances due?

The testimony falls far short of showing an inability on the part of complainant to take care of his own interests, or to establish that childish confidence in the defendant so pathetically set forth in the pleadings.

That there are grossly excessive charges of interest,—double charges in one or two instances,—and failure to give some credits which should have been given, is well shown by the evidence; but this does not serve to release the complainant from the payment of the accounts of his tenants charged against him, and for which, from the facts in evidence, he presumably received their cotton. His obligation to pay these accounts springs, not alone from his promise evidenced by his note in which they are included, but from the payment to him of the sums by his employés and tenants.

The transactions sought to be opened extend through a number of years, and the evidence to support the particular items of settlement between the parties may have been lost by the lapse of time. The burden of showing the facts rests upon the complainant, and cannot be met by general and indefinite evidence. He must specify and point out the erroneous charges, and by direct and particular evidence relieve himself of the obligation which *prima facie* rests upon him to pay these accounts. He must shed light, and not darkness, upon the subject. It is not sufficient for him to raise a suspicion that indefinite credits, at uncertain times, have been omitted, or that transactions to which he assented at the time, upon sufficient con-

sideration, ought not to have been made.  Facts must be shown in
the light of which the court may act with confidence and intelli-
gence.  *Clayton* v. *Boyce,* 62 Miss. 390.

Since the cause must be reversed we think it best to re-open the
account in so far as the additional credits claimed by the complain-
ant, and in so far as it is sought to purge it of the accounts of the
tenants and employés charged to the complainant.  The facts dis-
closed suggest that the claim for improvements upon the defendant's
plantation is in many respects unfounded and exaggerated.

The remaining question involved is as to what extent the usury
shown to have been charged affects the claim of the defendant.  It
is the settled law of this state that usury paid may be recovered
back, either at law, or in proper circumstances in equity.  *Bond* v.
*Jones,* 8 Smedes & M., 368 ; *Parchman* v. *McKinney,* 12 Ib. 631 ;
*O'Connor* v. *Clopton,* 60 Miss. 349 ; *Warmack* v. *Boyd,* 63 Ib.
488.  It has not been decided whether, in suits to recover usury
paid (suits upon executed as distinguished from executory contracts),
the whole interest paid, or only the usurious excess may be recov-
ered.  Our statute declares that, " if a greater rate of interest than
ten per cent. shall be stipulated for in any case, all interest shall
be forfeited."  Code 1880, § 1141.  Where the proceeding is in
equity, in reference to an executory contract enforceable *in pais,* the
whole penalty of the statute is enforced, and all interest forfeited.
*Bond* v. *Jones,* 8 Smedes & M. 368 ; *Parchman* v. *McKinney,* 12
Ib. 631 ; *Chaffe* v. *Wilson,* 59 Miss. 42 ; *Boyd* v. *Warmack,* 62
Ib. 536 ; *Bank* v. *Fraser,* 63 Ib. 234.  In *Bond* v. *Jones,* the
language of the court is broader than the facts involved, and seems
to imply that the same rule is applicable in suits to recover back
usury paid which applies when the defense is made to a suit on the
usurious contract, and that in either case the whole interest is for-
feited.  But in that case, while the usury had been paid as such,
and the suit was treated as one to recover back the money paid, its
real object was to cause the payment to be credited upon the un-
paid principal.  The decisions of this court, beginning with *Parch-
man* v. *McKinney,* are not in accord with the current of authorities
elsewhere, in that it is here held that in a proceeding in equity to

avoid a usurious security enforceable *in pais*, the complainant is not required to tender, nor will he on final hearing be required to pay the legal interest which might have been contracted for.   In *Parchman* v. *McKinney*, Judge Sharkey drew the distinction between an executed and an executory contract, and, while recognizing the rule that in suits to recover back usury paid only the excess over the legal rate could be recovered, he established the rule that in proceedings to avoid usurious securities, the whole interest was forfeited. We have followed the decision in that case, in deference to the rule of *stare decisis*, but we think it should not be extended beyond the line to which the court then indicated that it should be limited. We are not aware of any case in this state in which in a suit to recover back usury paid, the plaintiff has been permitted to recover more than the excess over the legal interest.   *Bond* v. *Jones* more nearly approaches such decision ; but that case antedates *Parchman* v. *McKinney*, in which a contrary rule is announced, and is, besides, not a case of a completed—an executed—contract.   The complainant should be required to pay interest not exceeding the legal rate on whatever debt may be shown to be due.

We affirm so much of the decree of the court as vacates the conveyance and directs the taking of the account.   The specific instruction of the chancellor directing the commissioner to disallow the item of $614 charged on the account of 1878, and the item of April 11, 1884, charged as "invoice of goods, about $200," is approved.

Except as specifically referred to in this opinion, the matters involved are not decided.

*Reversed and remanded.*