JACOB ERWIN, Respondent, *v.* ISAAC C. LOPER et al., Executor, Appellant.

The six months notice to creditors, given by executors, under the Revised Statutes (2 R. S. 89, § 39), when duly published, exempts such executors from all liability to the creditors of their testator, whose claims are not presented, for any assets paid over in good faith by them, in satisfaction of claims of an inferior degree, or of legacies, or in making distribution to the next of kin.

Where executors, under power of sale, given by the will, sell real estate, the avails become assets in their hands for the payment of debts and legacies, and to be accounted for the same as any other assets.

But the residue of such assets, after the payment of such legacies and debts as are presented, belongs to the devisees to whom the lands have been devised, subject to the executors' power of sale.

Accordingly, an executor, who, after the requisite publication of notice to creditors, and the payment of all claims presented thereunder, pays over to the devisee the remainder of the avails of lands sold by him under a power of sale in the will, is not liable to other creditors of the testator for such avails.

(Argued, January 24th, and decided January 31st, 1871.)

APPEAL by the executor from the judgment of the Supreme Court, in the second department, reversing the decree of the surrogate of Kings county upon the accounting and remitting the proceedings to the surrogate for a rehearing.

The testator died in 1858, leaving real property in the city of Brooklyn, encumbered by mortgage, and no personal assets. By his will he gave all his estate, real and personal, to his wife for life, or during her widowhood, with a devise over, upon her death or marriage, to his children, in equal proportions. The will gave the executors power to sell any of the real estate. In July, 1859, the executors published the statutory notice for all persons having claims against the testator to present the same on or before the 12th of January thereafter (1860). In July, 1858, and in June, 1859, the executors sold two parcels of real estate, and received therefor, in the aggregate, $6,246.81. On the 17th day of December, 1859, they presented an application for a final settlement of these accounts, and a citation was issued to all persons interested in the estate

to attend such settlement on the 13th of January, 1860. On
that day the executors and the heirs-at-law and devisees of the
testator appeared, and the accounting was continued from day
to day until the 28th of January, when the account was finally
settled and allowed by the surrogate, and the usual order
made by him. The executor, Loper, was charged with the
amount received by him upon the sale of the real estate
sold ....................................... $6,246 81

And credited by the amount of personal expenses,
    debts, etc., paid by him .......... $4,292 31
Paid Sarah Ann Simonson, the widow
    and devisee and co-executrix......  1,954 50
                          ——— $6,246 81

The respondent did not present his claim to the executors
pursuant to the notice, nor did he have any personal notice
of the final settlement of the accounts, and if the citation was
published, it was not published for the period required, as to
non-residents, and the respondent at that time was a resident
of Jersey City.

Among the payments credited to the executor on the set-
tlement of the accounts were items for payment made to an
agent who had charge of the real estate, interest upon a mort-
gage upon some portion of the realty held by the executor
Loper, for taxes and assessments on the real property and a
note held by Loper.

At the time of the death of the testator, an action was
pending against him in the Supreme Court, at the suit of the
respondent, to recover the amount of certain promissory notes
made by the testator. The action was continued after his
death against his executors. The action was tried at circuit
before Judge LOTT, in November, 1858, and a verdict ren-
dered for the defendants.

The case upon an appeal was argued at General Term, in
September, 1859, and the judgment affirmed December 17th,
1859. In September, 1860, the respondent brought an action
against the executors upon four notes, dated in May, 1855,

which had been surrendered when the notes before sued were given, and upon which the testator was indorser, and obtained a verdict thereon in November, 1861, and final judgment in June, 1862, for $4,887.17. In August, 1862, the respondent presented to the surrogate a petition, that the executors account and pay the said judgment, etc., and the usual citation was issued and proceedings had. Upon the hearing before the surrogate it was proved that upon the trial of the first action the four indorsed notes were produced, and that Judge LOTT said they were good for nothing, as the testator had not been charged as indorser; and that after the trial, and before the decision of the General Term on that action, one Wheaton, who was an indorser on the notes of the testator then in suit, said to Mr. Loper that, if Erwin did not succeed in that action, he would hold the estate on the original notes. Mr. Loper testified that the respondent never made any claim against him as executor on the old notes, and he did not know that he claimed that the old notes were good; that soon after the trial of the first action, Erwin's attorney sent to him for the old notes and said he would give him the new notes, and that he told him they were burned, and he did not then know that they claimed anything on them.

The surrogate held that the executors were not liable to account to the petitioner, and dismissed the proceedings, and the order was reversed by the Supreme Court.

*J. M. Van Cott,* for appellant.

*Jesse C. Smith,* for respondent.

ALLEN, J. If the executor and executrix acted in good faith, and are within the fair protection of the statute prescribing the duties and regulating the liability of executors and administrators, the judgment of the Supreme Court should be reversed, and the decree of the surrogate affirmed. I agree with the surrogate that there is an entire absence of evidence of bad faith on the part of the appellants, or that the

notice to creditors to exhibit their claims was given, or the proceedings for the final settlement of their accounts taken fraudulently or collusively, or from any improper motive. I find no evidence that the executors had notice or any reason to believe that any claim was to be made upon them or against the estate, upon the contract of indorsement upon the notes given in 1855, and surrendered long before the death of the testator, or that if made, it could be sustained. All the evidence is consistent with entire good faith on the part of the executors in all their proceedings.

The most that can be said is that the executors may have deemed it possible that a claim might thereafter be made, but there is not the least reason to suspect that they thought the claim valid, or that it could be established as a legal one upon the estate. The executors, nearly a year after the verdict against the respondent in the first action, and more than eighteen months after the granting of the letters testamentary, gave the notice authorized by statute for creditors to exhibit their claims on or before the day specified, and which was more than six months from the day of the first publication of the notice, and the same was published as required by law. (2 R. S., 88, § 34.) This was notice to all the world without personal service upon any one, and the respondent exhibited no claim. The publication of this notice exempted the executors from all liability to the respondent for any assets or moneys paid in satisfaction of any claims of an inferior degree, or of any legacies, or in making distribution to the next of kin. (2 R. S., 89, § 39.) Executors and administrators conforming to the statute and giving the prescribed notice may proceed in the disposition and distribution of the assets, as if no claim other than those presented existed, but the creditors who may have omitted to present their claims within the six months, are protected from loss by the remedy given against the devisees, legatees and next of kin, to whom any land may have come, or any assets shall have been paid or distributed. (2 R. S., 452, § 32; id., 90, § 42.) The title to the real estate of the

testator was not devised to the executors, but the title vested in the devisees, subject to be divested by the exercise of the power of sale conferred by the will. (*Kinnier* v. *Rogers*, 42 N. Y., 531.) Upon the conversion of the real estate into money, by a sale under the power, the same became assets in the hands of the executors for the payment of debts and legacies; and the executors were liable to account for it, as for any other assets that might come to their hands. (*Clark* v. *Clark*, 8 Paige, 152.) But so much of the avails of the real estate sold as were not required for the payment of the debts, legacies and expenses of the administration belonged to the devisees, as the land belonged to and would have been held by them but for the execution of the power of sale by the executors. Upon the satisfaction of all the claims against the estate, the executors could have been compelled to pay over the residue to the persons entitled under the will; and they are protected by the statute in paying the money, without a compulsory order, to the owners of the land or persons entitled under the will, upon the satisfaction of the claims that were presented.

It is true that a part was paid in satisfaction of taxes and mortgages upon the lands. It is also true that the lands mortgaged are, as between the devisee and the executor, and the creditors and legatees of the testator, the primary fund for the payment of the mortgage debt; and if they are of sufficient value to pay the debt, the personal assets will not be charged. (1 R. S., 749, § 4; *Johnson* v. *Corbett*, 11 Paige, 265; *Halsey* v. *Reed*, 9 id., 446.)

But there is no conflict of interest between the respective claimants to the fund in this case. The respondent, had he presented his claim to the executors, could have claimed that his debt should be paid in preference to the mortgage debts; but he lost that right by the omission to present his claim, or to assert any right.

By the will of the testator, all his estate, real and personal, was given to his wife, during life or widowhood, with remainder to his children, share and share alike. The devisees of all

the property were the same, and they took it charged with the encumbrances. The whole estate was liable for the payment of all the encumbrances; and, although each parcel was, technically, primarily chargeable with its own particular encumbrance, there was, except for the benefit of creditors, no reason for keeping the fruits of the sale of the several parcels distinct, with a view to making each parcel pay its own encumbrances. The devisees would be equally benefited by the payment of the encumbrances, from funds derived from any source, and the debts presented being paid, the devisees and legatees were entitled to the moneys, or to have them applied to the payment of the mortgage debts. The executors, therefore, with the assent of the parties entitled, properly paid the taxes and assessments upon the property, and the interest upon the mortgage debts, and for the services of the agent having charge of and protecting the property. This was equivalent to a payment to the devisees entitled. It was, in truth, done with their assent, and was ratified and approved by them, as well the devisee for life as those in remainder, all of whom were adults and were represented before the surrogate upon the final accounting. The decree upon the accounting is conclusive against them, and with the like assent the residue was paid to the devisee for life, or upon her order to some of the devisees in remainder, and all the payments were made before the final accounting. The money clearly belonged to those to whom, or for the benefit of whom, it was paid, although their claim was inferior in degree, and subordinate to that of the respondent. But the respondent made no claim, and the executors are not chargeable for the assets thus disposed of before the commencement of the action by the respondent. The payment of the taxes and assessments and of the mortgage debts enured to the benefit of the respondent, as they, to the extent of the payments, enhance the value of the property in the hands of the devisees, chargeable with his debt. The objection that the claim of the executor, Loper, was not well proved before the surrogate is not tenable here. The evidence upon which it

was allowed by the surrogate is not returned, and there was no evidence given upon the hearing upon the petition of the respondent tending to impeach it. The only person that can be injuriously affected by the decree is the executor, Loper, who, more than ten years since, and before the respondent made any claim upon the estate, in good faith, paid over the moneys to those apparently, and subject to the claim of the respondent, actually entitled, and if now compelled to account to the respondent, will be subjected to some embarrassment and possible loss. If there is any loss to the creditor, which is not apparent under the statutes giving him a remedy against the devisees, it is the result of his own laches in omiting to present his claim within the time limited by law for that purpose.

The judgment of the Supreme Court should be reversed, and the decree of the surrogate affirmed, with costs.

All the judges concurring.

Judgment reversed and Surrogate's decree affirmed.