THE GERMAN SAVINGS BANK, PLAINTIFF, *v.* EMILIE SHARER, ADMINISTRATRIX, ETC., AND CONRAD STEIN, DEFENDANTS AND APPELLANTS, IMPLEADED WITH OTHERS, RESPONDENTS.

*Surplus moneys — when the court can distribute them after the death of the owner of the land — how to be distributed — right of a creditor to be made a party — what costs can be allowed.*

Where, after the death of the owner of real estate, an action is commenced to foreclose a mortgage thereon, in which a sale thereof is had in pursuance of a judgment of the court, the surplus moneys arising upon the sale may be distributed by and under the direction of the court.

Chapters 658 of 1867, and 170 of 1870, requiring surplus moneys to be paid over to the surrogate, do not apply to sales made in pursuance of a judgment of the court.

*Loucks* v. *Van Allen* (11 Abb. [N. S.], 427) followed.

The surplus moneys should be distributed ratably among all the general and judgment creditors of the deceased owner, after notice to them and an opportunity given to appear and be heard.

Where a general creditor, who had no notice of the proceeding, until after the entry of the order confirming the report of the referee as to the distribution of the moneys, applies to be made a party to the proceeding and to have an opportunity to be heard, his application should be granted.

In proceedings for the distribution of surplus moneys, motion costs and disbursements only can be granted. No allowances can be made.

APPEAL by the administratrix and by Conrad Stein, a general creditor of the intestate, from an order confirming the report of a referee and directing a distribution of the surplus moneys arising upon a sale in foreclosure, and from an order denying the application of Stein to become a party to the proceeding, made after the entry of the order confirming the report of the referee, and from an order denying a motion to resettle one of such orders.

*A. C. Brown,* for the appellants.

*Sigismund Kaufman,* for the respondents.

DANIELS, J. :

The surplus which has been directed to be distributed arose upon a mortgage sale, by which the title and interest of two different persons in the mortgaged property was sold. The rights and interests of the claimants to so much of the surplus as was created by the share of one of the joint owners in the property were ascertained without serious difficulty. As to that no complaint has been made, and it forms no part of the contest brought before the court by the present appeal.

The share of the surplus now in question was derived from the interest of John Sharer in the estate. He died before the commencement of the foreclosure suit, leaving personal property of no significance by way of value. In the proceedings before the referee all of his creditors, except the appellant Stein, presented their debts for payment, and as such debts and expenses left only the sum of

one dollar and sixty-one cents, the surplus was practically distributed between them. These debts, as there was no personal estate, were in the nature of charges upon the real estate of the intestate debtor, and attached in the same manner to the surplus when it was realized in the action prosecuted for the foreclosure of the mortgage. This resulted from the statutory enactments existing upon this subject, providing for the application of the real estate for the payment of the debts of the intestate, when the personalty has been found to be insufficient for that purpose. (*Hyde* v. *Tanner*, 1 Barb., 76; *Roe* v. *Swezey*, 10 id., 247.) It is only the residue remaining after payment of the debts which can be divided between the heirs or devisees of the deceased debtor. (*Erwin* v. *Loper*, 43 N. Y., 521.)

The court came into possession of this fund subject to these charges in favor of the creditors. And as it surely had jurisdiction over the action through which the fund was derived, it had the power to retain it until the rights of claimants to it were settled, unless that had been taken away by the statutes which will presently be noticed. For it is a well settled principle of courts of equity, when jurisdiction of an equitable subject matter has been once properly acquired, that it will be retained until a full and complete disposition of the controversy has been made. (*Taylor* v. *Taylor*, 43 N. Y., 578, 584; *Gilian* v. *Norton*, 33 How., 373; Story's Eq. Jur., §§ 796, 797.) The power to accomplish the same end was also within the jurisdiction of this court as a court of equity to settle and adjust the accounts of executors and administrators. (*Rogers* v. *King*, 8 Paige, 210.)

But in its administration it should observe the requirements of the statute in proceedings to obtain that end. As to the fund so to be distributed, all the creditors having no lien by way of judgment or mortgage or other similar incumbrance on the land, stand upon an equality. They are under the statute equally entitled to share in the distribution of the fund. And the circumstance that several of them in this case had recovered judgments for their debts by default against the administratrix did not work any change in the application of that principle. For the purpose of observing it an opportunity should have been afforded all the creditors to present and substantiate their claims. And ordinarily the course prescribed by the statute for executors and administrators is the only one

which can be either safely or properly adopted. But this case could very well be an exceptional one in that respect, for the reason that it was made to appear that all the creditors had appeared and been heard, except the appellant Stein. There was therefore no necessity for publishing notice requiring creditors to appear and present their claims, as the facts have been finally made to appear in the proceeding. But something more should have been done than was provided for before the fund was distributed to prevent this creditor from being left entirely out of the case. He was as completely entitled to his share of the fund as was either of the other creditors. And still no opportunity was extended to him to appear and establish his claim. But the proceeding was carried on entirely without him, and no notice, either actual or constructive, was given to him that it was in progress. This violated a fundamental right in the enjoyment of which he was entitled to be protected. He had done nothing whatever for which he could be lawfully deprived of this right, and as he had received no information of the proceeding he could not properly be charged with neglect because he had omitted to present his claim at an earlier period of time than he did.

The fact that the other creditors have received the money which was probably payable to him cannot change the legal aspect of the case. That a wrong has been done to him through their agency or participation is no reason whatever why it should be rendered still further effectual by denying him all opportunity for redress. He is entitled to be heard, and in case he establishes his claim as a charge upon this fund, he should also have the assistance of the court in the way of redressing the wrong to which it has unintentionally been made a party. The least that can be done is to open the proceeding and afford him an opportunity of being heard before the referee, leaving him at liberty, if he shall thereupon be successful, to seek further redress by availing himself of all appropriate legal remedies for the purpose of securing what may be just and right in the case.

Chapter 658 of the Laws of 1867, as it was afterwards amended by chapter 170 of the Laws of 1870, has not deprived the court of its jurisdiction over surplus funds, produced as this fund appears to have been. For neither act was made to include such a surplus

arising out of an action in court. In terms the direction given controlled only the conduct of a person or corporation making a mortgage sale. This sale was not made in that manner, and it was the court that received and became charged with the obligation of properly distributing the surplus. This subject was carefully considered by Mr. Justice LEARNED in *Loucks* v. *Van Allen* (11 Abb. [N. S.], 427), and that was his conclusion. The statute by all fair rules of construction sustains that view, and there was consequently no legal necessity for sending this fund into the hands of the administratrix or of the surrogate for distribution. It could well be done by the court by conforming its proceedings, as far as that was practicable, to what had been provided for by the statute to secure an equal distribution of the fund among the creditors of the intestate, and that end would have been attained if the omitted creditor had been brought into the proceeding.

It was not proper to pay the fees of the referee in the entire proceeding out of this particular surplus. A substantial portion of his services were performed in determining what should be done, as he did, with the other half of the surplus. And for them he should have been paid out of that fund.

The proceeding too was not one for allowances to counsel. The provisions made upon that subject apply only to the proceedings and costs in actions. All that can be allowed upon an application of this nature beyond the disbursements, are mere motion costs for such motions as may be properly made.

In the judgments recovered against the administratrix costs have been included. This was not allowable, as a matter of course, as the award of costs appears to have been made. And while the administratrix might not now be permitted to contest the right to the costs, the creditors entitled to payment out of this fund stand in an entirely different situation. They have the right to insist that the fund shall be equally and proportionately applied on the debts of the intestate, and for that reason that these costs, not legally recoverable, because not specially obtained on motion, shall be excluded from the computation. The orders made for the distribution of the fund, and denying the application of Stein to be allowed to appear and prove his claim, should be reversed, with ten dollars costs, besides disbursements, and an order should be entered

sending the case back to the referee for further proof, and for a distribution of the fund ratably among all the creditors of the intestate.

DAVIS, P. J., and BRADY, J., concurred.

Orders reversed with ten dollars costs and disbursements.