In the Matter of the Judicial Settlement of the Accounts of
THOMAS J. MULLON et al., as Administrators, etc.

A creditor, having an unpaid debt against a decedent, not barred by the
Statute of Limitations, is not precluded by a mere omission to present his
claim, pursuant to notice, from establishing his debt and demanding an
accounting at any time before the executor or administrator is formally
discharged from his trust.

Where, however, an executor, who is also residuary legatee, after having
paid all claims under the will and all claims presented in usual course
pursuant to the notice, and, acting in good faith, applies to his own use
the assets remaining, he can only be held accountable for the actual
value of such assets, and cannot be charged with the profits of a
business in which he has put such assets.

While the inventory and appraisal filed by the executor, are not con-
clusive as to the extent or value of such assets, they are *prima facie*
evidence thereof, and the burden is upon the contestant seeking to sur-
charge the account to show that articles were omitted or that a greater
sum was realized than the appraised value.

M., who had been carrying on the ice business, died leaving a will by
which his sons were made residuary legatees. After their father's death
the sons took possession of said property and thereafter carried on the
ice business as co-partners. The executors named in the will having
renounced, the sons were appointed administrators with the will annexed.
They filed an inventory of the estate including therein the ice plant, tools

and fixtures formerly used by the testator in said business and the stock on hand. They, pursuant to an order of the surrogate, caused notice for the presentation of claims to be duly published, and paid in full the claims presented, also the specific legacies and funeral expenses. The payments thus made exceeded by more than $2,000 the whole appraised value of the estate. Five years thereafter the sons sold the business and the property connected therewith. The bill of sale included many articles purchased by the sons after the death of M., existing contracts for the sale of ice, and the stock of ice then on hand, which was on premises leased by them and in which the testator never had any interest. The bill of sale also contained a covenant on the part of the vendors not to engage in the ice business for ten years without the consent of the vendee. In an action for the foreclosure of a mortgage given by M., a deficiency judgment was rendered after the sale so made by the sons, against them as administrators. Upon an accounting in proceedings instituted by the judgment creditor, the administrators charged themselves with the appraised value of said ice plant, tools and machinery as stated in the inventory. It was not shown that any of the testator's personal property was omitted from the inventory, or that any article therein named was appraised at less than its full value; but the creditor claimed and the surrogate decided that as no accounting was had and the administrators continued the business, using therein the property used by the testator without any formal transfer of title, the business, its profits, accretions and proceeds belonged to the estate, and the administrators were surcharged with the difference between the inventoried value of said property and the sum received by them on the sale. *Held,* error. Reported below, 74 Hun, 358.

(Argued January 29, 1895; decided February 26, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 6, 1893, which reversed a decree of the surrogate of the county of Albany upon an accounting by Thomas J. Mullon and Jacob H. Mullon, as administrators with the will annexed of John Mullon, deceased, and granted a new trial.

This proceeding was instituted by William Bayard Van Rensselaer, as trustee for Laura Van Rensselaer, said trustee claiming that a judgment for deficiency on the foreclosure of a mortgage should be paid to his *cestui que trust* by the administrators.

The facts, so far as material, are stated in the opinion.

*Marcus T. Hun* for appellant. Administrators are not authorized to convert to their own use, immediately upon the death of the testator, such of the property of the estate as they may elect to purchase of themselves at the inventory prices. (*Blood* v. *Kane,* 130 N. Y. 514.) The obligation, existing on the part of the creditor, to surcharge the account was fully met by the proof offered by him upon this subject. (*Dorney* v. *Thacher,* 76 Hun, 361; *Forbes* v. *Halsey,* 26 N. Y. 53; *Blood* v. *Kane,* 130 id. 518.) The administrators, having created a confusion of assets of the testator's estate with what they claimed to be their own, were bound to identify each in kind and value, and show specifically what part, if any, of the proceeds of sale represented the consideration paid for each. (*Hart* v. *Ten Eyck,* 2 Johns. Ch. 62; *Silsbury* v. *McCoon,* 3 N. Y. 379; *Hannahs* v. *Hannahs,* 68 id. 610.) The judgment creditor has been guilty of no *laches* in the enforcement of this claim. (1 R. S. 749, § 4; *Halsey* v. *Reed,* 9 Paige, 446; *Johnson* v. *Corbett,* 11 id. 265; *Williams* v. *Eaton,* 3 Redf. 503.) The questions of fact are reviewable in the Court of Appeals. (*Hewlett* v. *Elmer,* 103 N. Y. 156–166; *In re Sprague,* 125 id. 732.) The objections filed against the administrators' accounts were specific and sufficient. (*Dorney* v. *Thacher,* 76 Hun, 361; *In re Hart,* 60 id. 516.)

*John A. Stevens* for respondents. The surrogate erred in his findings of fact and conclusions of law. (*Forbes* v. *Halsey,* 26 N. Y. 60; *Marre* v. *Ginochio,* 2 Bradf. 165; *Bainbridge* v. *McCullough,* 1 Hun, 488.) It is in the power of the executor or administrator to protect himself by an advertisement for claims which, when duly made, will authorize distribution of the estate without personal risk to respond for judgment claims or any other demands which have not been presented under the advertisement and before distribution. (*Trust* v. *Harned,* 4 Bradf. 215; *In re McEvoy Estate,* 3 N. Y. Supp. 337; *Erwin* v. *Loeper,* 43 N. Y. 521; *Williams* v. *Eaton,* 3 Redf. 503.) The administrators being also the resid-

uary legatees under the will the title to all the property was in them subject only to the rights of creditors, and after the advertisement for claims, and the payment of all the claims which came to their knowledge, their relation to the property changed from that of trustees to owners, and their title to it became absolute. (*Hudson* v. *Reeve*, 1 Barb. 89 ; *Elliot* v. *Kemp*, 7 M. & W. 313; *Blood* v. *Kane*, 130 N. Y. 517 ; *Merchant* v. *Driver*, 1 Saund. 307.) If the administrators had no right to take and use the property as their own, or to conduct the business as their own, they could only be charged with the inventoried price of the property and interest thereon until the accounting. (*Hannahs* v. *Hannahs*, 68 N. Y. 610 ; *Smith* v. *Weld*, 15 Wkly. Dig. 369.)

ANDREWS, Ch. J.    The fundamental error in the decree of the surrogate, rendered on the accounting, is the assumption that the ice business carried on by Thomas J. Mullon and Jacob H. Mullon, from the death of their father, John Mullon, was carried on by them as administrators of his estate. Upon this assumption the surrogate reached the conclusion that the sale made by them to Sherman of the ice business and the property connected therewith was a sale of the business and property of the estate of John Mullon, and that the administrators are accountable as such for $20,250, the consideration of the sale.

The result reached subjects the administrators to a liability much beyond the value of the assets as inventoried which came to their hands on the death of their father, and involves the implication that for nearly five years subsequent to his death, the sons devoted their time and labor in carrying on the business for the benefit of the estate. The assumption made by the surrogate is unfounded in fact and in law. There can be no doubt upon the evidence that in form the sons carried on the business for themselves as co-partners from the death of the father. They took possession of and used in the business the horses, wagons and equipments which had been used by the testator. But they carried on the business in their

own names, and in the bill of sale to Sherman they described themselves as " trading and doing business as co-partners under the firm name and style of John Mullon's Sons." Moreover, they had no reason to suppose that in so doing they were in any way defeating or prejudicing the rights of the creditors of the testator. They were the residuary legatees under his will. The executors having renounced, they were appointed administrators with the will annexed. They procured an inventory of the estate to be made and filed October 20, 1886, in which the whole personal estate was appraised at $9,426.20, including therein the property and stock used by the testator in his ice business of the appraised value of $6,582. On the 30th of March, 1887, pursuant to the order of the surrogate, they caused notice for the presentation of claims to be duly published, and they paid in full all the claims presented. They paid the legacies and funeral expenses, and the payments on account of the estate exceeded the whole appraised value by more than $2,000. No claim was presented by the petitioner until about the commencement of the present proceedings for an accounting, in October, 1892. The claim then made was on account of a deficiency judgment obtained against the administrators of John Mullon for $3,811.70, October 5th, 1892, in an action for the foreclosure of a mortgage for $6,000, given by John Mullon in 1881, payable five years from date, to the estate which the contestant represents. Although the mortgage became due soon after the death of the mortgagor, no proceedings appear to have been taken to collect it until several years after his death, and so far as appears no claim was made or notice given to the administrators that such a debt was outstanding or that a deficiency would be likely to arise, prior to the sale to Sherman, February 28th, 1891.

But if in judgment of law the business conducted by the sons of John Mullon, after his death, was the business of the estate, and all the property used therein and sold to Sherman was the property of the estate, the understanding and intention of the persons in whose name it was carried on would be

N. Y. Rep.]    Opinion of the Court, per ANDREWS, Ch. J.

immaterial, and the administrators would be bound to account for the consideration of the sale, however harshly such a conclusion might operate against them. They have charged themselves in the account with the appraised value of the ice plant, tools and machinery, as stated in the inventory. It was not shown that any personal property belonging to the testator was omitted therefrom. No direct evidence was given and no attempt was made to show that any article in the inventory was appraised at less than its full value. But it is insisted that as no accounting was had, and the administrators continued the ice business, and used therein the articles used by the testator, without any formal transfer of the title from themselves as administrators to themselves as individuals, the business, its profits, accretions and proceeds belonged to the estate. The petitioner, therefore, sought to surcharge the account rendered by the administrators with the difference between $6,582.00, the inventoried value of the ice fixtures and property, and the sum of $20,250.00, the consideration of the sale to Sherman. The decree proceeds substantially on this claim. The injustice of this result is very obvious. It appears from the bill of sale that it embraced the good will of the business of "John Mullon's Sons;" all the personal property connected therewith, including many things purchased after John Mullon's death; existing contracts for the sale of ice; about 9,000 tons of ice collected and stored by the firm in 1890 and 1891 on premises which the firm held under a lease, and in which the testator, John Mullon, never had any interest; and the bill of sale contained a covenant on the part of the vendors, jointly and severally, that they would not for ten years engage in the ice business in the counties of Albany and Rensselaer without the consent of Sherman.

We think the administrators were not in law bound to account for the proceeds of the sale to Sherman. It is not disputed that the sale included many articles which belonged to John Mullon at his death, and which are entered in the inventory. The administrators held the assets of the estate

as trustees for creditors and legatees, and this relation, at the time of the sale, had not been terminated by any decree or judicial proceeding. The administrators having regularly proceeded by notice to creditors, were justified in using the assets to pay claims presented, and other creditors who had neglected to present their claims had no cause to complain of such payments. (*Erwin* v. *Loper*, 43 N. Y. 521.) Upon payment of all debts, legacies and charges against the estate, the title to the remaining assets would at once vest in the residuary legatees under the will, without any formal transfer from themselves as administrators. (*Blood* v. *Kane*, 130 N. Y. 518.) In the present case, although the administrators appear to have proceeded on the assumption that all claims against the estate were discharged, and thereupon treated the assets remaining as belonging to them individually, this was a mistake. Some years later, and before the administrators had applied to be discharged of the trust, the claim in question was presented. It cannot be doubted, we think, that a creditor having an unpaid debt against a decedent, not barred by the statute, is not precluded, by mere omission to present his claim pursuant to notice, from establishing his debt and demanding an accounting at any time before the executor or administrator is formally discharged from his trust. But where an executor or administrator proceeding in good faith, he being also residuary legatee, applies to his own use the assets remaining after having paid all the claims under the will and all claims presented in usual course pursuant to notice, he cannot, we think, be held accountable, except for the actual value of the assets which formed a part of the testator's estate, nor can he be charged with the profits of a business into which he puts the money or property of the testator or intestate. The inventory and appraisal are not conclusive of the extent or value of the assets, although *prima facie* evidence. (*Forbes* v. *Halsey*, 26 N. Y. 53.) The creditors on an accounting may show that articles were omitted or that they realized a larger sum than the appraised value. In the present case the articles connected with the ice business con-

tained in the inventory were of a nature capable of identification and separate valuation, and the burden was upon the contestant to surcharge the account. This burden was not met by showing that five years after the testator's death the administrators embraced in a single sale, which purported to be a sale by them as individuals, some of the property specified in the inventory and also property which never belonged to the estate, for a gross sum exceeding the inventory value of the articles of the estate included in the sale in the absence of any evidence of the consideration allowed for the former, or that its actual value exceeded the inventory value.

We think the decree of the surrogate was properly reversed by the General Term, and judgment absolute is, therefore, directed in favor of the respondents on the stipulation.

All concur.

Judgment accordingly.