(25 Misc. Rep. 150.)

## LAWYERS' SURETY CO. OF NEW YORK v. REINACH.

(Supreme Court, Appellate Term.    November 10, 1898.)

1. MONEY HAD AND RECEIVED—ADMINISTRATION—DISTRIBUTION.
    Moneys paid by an administratrix under an erroneous decree of distribution, being assets of the estate, are properly recoverable in an action at law.

2. ADMINISTRATORS—RIGHTS OF ACTION—RECOVERY OF ASSETS.
    Where an administratrix paid moneys of an estate under an erroneous decree of distribution, the right of action for their recovery is not in her personal, but in her representative, character. Hence, in such action, a claim against plaintiff individually cannot be set off.

3. SAME—TRUSTS—MERGER OF ESTATES.
    The rule that, on fulfillment of a trust, the title of the trustee is at an end, and that, where the trustee is entitled to the beneficial estate, the two estates are merged, thus causing the trustee to become vested in his own right with the entire estate, does not apply to a decedent's estate, where other persons than the administrator are entitled to share in it.

4. SAME—DEBTS OF ESTATE—PRESUMPTIONS.
    In the absence of proof, the court will not assume that a decedent did not leave debts.

5. SAME—DECREE OF DISTRIBUTION—FINALITY.
    There is no presumption that the debts against an estate are paid because of the fact that a final decree of distribution has been entered, as a claim may be filed at any time before the formal discharge of the administrator.

6. SAME—MODIFICATION.
    The surrogate's court has power to amend or modify a decree of distribution for the benefit of newly-discovered distributees, who were not parties to the original proceedings.

**7. SAME—DUTIES OF ADMINISTRATOR—ASSETS.**

Where, after a decree of distribution, but before the discharge of the administrator, new parties in interest are discovered, it is the duty of the administrator, although one of the distributees, to recover the proportion of the funds overpaid to the distributees under the decree.

**8. SAME—ASSIGNMENT OF RIGHT OF ACTION.**

An administrator entitled to recover money overpaid in the distribution may assign such right of action subject to the rights of persons interested in the estate.

**9. SAME—FRAUD OF ADMINISTRATOR—EFFECT ON ESTATE.**

In a suit to recover moneys overpaid to a distributee under an erroneous decree, the distributee cannot assert as a set-off or defense a claim based on a false statement of the administrator concerning next of kin, which induced the distributee to purchase their respective interests in the estate, since such information was given as an individual, and not as administrator.

**10. CORPORATIONS—ULTRA VIRES—SURETIES.**

Where a surety company was surety on an administrator's bond, an assignment to it by the administrator of his right of action to recover moneys overpaid to the distributees is within its powers, as the surety company may be ultimately called on to pay the moneys so overpaid, and hence the action is practically for the benefit of the estate.

Appeal from city court of New York, general term.

Action by the Lawyers' Surety Company of New York against Max Reinach to recover money paid under an erroneous decree of the surrogate court. A judgment in favor of plaintiff was affirmed by the general term of the city court of New York (51 N. Y. Supp. 162), and defendant appeals. Affirmed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Edward W. S. Johnston, for appellant.

Marshall S. Marden, for respondent.

GIEGERICH, J. On August 19, 1895, one Patrick Murphy, a resident of the county of Kings, died, intestate, possessed of personal property of the value of $1,200; and, on or about the 23d day of August of the same year, the surrogate of that county issued letters of administration upon the estate to Ann Murphy, his widow, and plaintiff became surety upon the bond given by her for the faithful performance of the duties incumbent upon her in such official capacity. On the 20th day of November, 1895, one Elizabeth Aaron, a daughter of the deceased, by an instrument in writing, assigned to the defendant herein her interest in the estate of the deceased; and one Edward Murphy, intestate's son, by an instrument in writing bearing date the 20th day of April, 1896, likewise assigned to the defendant his interest therein. Upon a general accounting by the administratrix, had in the surrogate's court, and to which the defendant was a party, a decree was made and entered on November 25, 1896, judicially settling such accounts, and ordering, adjudging, and decreeing that she pay sums aggregating $753.40 to Max Reinach, the defendant in this action, as assignee of the shares and interests of the aforementioned Edward Murphy and Elizabeth Aaron, a son and daughter, respectively, of said deceased, as and for the shares to which they, his only next of kin, were entitled; and such sum was paid by her to the

defendant on or about the 25th day of November, 1896. It was subsequently discovered that there were other persons interested in the estate; and on or about January 5, 1897, the decree was reopened by the surrogate, after due notice to the defendant, who was represented by counsel in such proceeding; and on the 15th day of April, 1897, a new decree made, modifying and amending the previous one, by striking therefrom the direction for the payment by the administratrix to the defendant, as such assignee, of the sum therein stated, and substituting a provision that she pay to the defendant, as the shares of his assignors, the sum of $350.14 only; to which application, as well as the settlement of the decree therein, the defendant was likewise a party, he having had due notice thereof, and having been represented by counsel.

On or about the 24th day of April, 1897, the said Ann Murphy, as such administratrix, by an instrument in writing and duly acknowledged, assigned, transferred, and set over to the plaintiff all her right, title, and interest as administratrix under the decree in and to any claim she might have had against the above-named defendant. The defendant having refused to refund the moneys so overpaid, the plaintiff brought this action to recover the sum of $413.25, that being the difference between the sum directed to be paid by the original decree and the amended one. The complaint substantially sets forth most of these matters, and alleges that the sum last mentioned was held to the use of the said administratrix. The answer denies the overpayment, or the holding by the defendant of said moneys, or any part thereof, to the use of the said Ann Murphy, individually or in any other capacity, and disavows any knowledge or information sufficient to form a belief as to the making of the assignment to the plaintiff of the alleged cause of action, as well as alleging that it has no legal or other capacity to accept or receive such assignment, which, in consequence, is ineffective and void in law. For a further, separate, and distinct defense, it is alleged that prior to November 25, 1896, the defendant's assignors requested him to purchase their interest in the estate, and, as inducement therefor, stated and represented that they were the only heirs at law and next of kin of deceased; that thereupon, and before purchasing such shares, he inquired of the said Ann Murphy as to the truth of such statements, and that she, for the purpose of inducing him to make such purchase, substantiated such representations; that relying upon the truth thereof, and without knowledge of their falsity, the defendant purchased the afore-mentioned shares; that such statements were in fact false, and known so to be by each of said assignors and said Ann Murphy; that the defendant received all moneys mentioned in the complaint as such assignee only; and that no action at law or otherwise has been brought by the said Ann Murphy, individually or as administratrix, or by the plaintiff, against either of defendant's said assignors. At the trial, the plaintiff offered in evidence the assignment made to it by the said Ann Murphy, as administratrix; and the defendant objected to its admission, on the ground that acceptance thereof by plaintiff was ultra vires, and not within the scope of its chartered powers, and also that it was outside of the lawful powers

of the administratrix to assign a claim due to the estate. The assignment was, however, admitted in evidence, and the defendant excepted.

The defendant's attorney testified that between the 17th and 20th days of November, 1895, about four or five days before the execution of one of the said assignments to the defendant, he, at the request of his client, interrogated Ann Murphy as to whether she was the widow of Patrick Murphy, and the person who had applied for letters of administration upon his estate, and that he received answer in the affirmative. In this connection he testified:

"She wanted to know who I was, and I told her that I represented Mr. Reinach, and that her daughter, Mrs. Elizabeth Aaron, had called upon Mr. Reinach, and wanted to sell him her interest in this estate, and I wanted to know whether Elizabeth Aaron and Edward Murphy were the only children they had, and whether there were any other heirs or next of kin having any interest in the estate; and she told me that the only people were herself and Mr. Edward Murphy and Mrs. Aaron, and that there was nobody else who had any interest, and that they were the only children."

He thereupon reported these matters to his client.

The defendant testified that he purchased in reliance upon the statements thus made to his attorney; and upon cross-examination he stated:

"I am engaged in the business of buying and collecting legacies and inheritances. Edward Murphy and Elizabeth Aaron came to me in regard to the purchase. * * * I cannot tell you exactly how much I paid for these shares, unless I look at my books, and I have not got them here. I could not tell from memory how much I paid for it. I think I paid between $225 or $300 for each of the claims."

The petition of said Ann Murphy for appointment as administratrix was put in evidence by the defendant, for the purpose, as declared by him, of showing the facts leading up to the entry of the original decree, from which it appears that the deceased was a widower when he married the administratrix, and that upon his demise he left, surviving him, a daughter by a former marriage; i. e. said Elizabeth Aaron.

At the close of all the evidence, the plaintiff moved for the direction of a verdict in its favor, which was granted, and to which ruling the defendant duly excepted. The judgment thus rendered was affirmed by the general term of the city court of New York, and the defendant brings on the appeal, seeking to have reviewed the correctness of the rulings made by the trial justice.

The first question presented for solution is whether the present action can be maintained. Certainly, while the surrogate has no power to render an affirmative judgment for the excess of moneys overpaid to a legatee or distributee, in favor of the executor or administrator against such legatee or distributee (In re Underhill, 117 N. Y. 471, 22 N. E. 1120), it is clear that by analogy, at least, the authorities support an action at law for the recovery of moneys so overpaid. It has been laid down as a general proposition (Clark v. Pinney, 6 Cow. 297) that an action lies in all cases where the defendant has in his hands moneys which ex æquo et bono belong to the plaintiff.

"When money," says Savage, C. J. (6 Cow. 299), "is collected upon an erroneous judgment, which, subsequent to the payment of the money, is reversed,

the legal conclusion is irresistible that the money belongs to the person from whom it was collected. Of course, he is entitled to have it returned to him. The only question is whether this would be the proper remedy. * * * Upon the whole, my view of the question is this: The general principle is, undoubtedly, in favor of sustaining the action. * * * The inclination of courts is to extend the actions for money had and received. It is not denied·that the plaintiff is entitled to some remedy for the money, though it was taken from him by process erroneous merely. Then, why turn him round from this simple action to the antiquated remedy by scire facias? I do not think the purposes of justice require it."

There the action was brought by the defendant in the judgment, from whom the money was collected upon execution.

In Peyser v. Mayor, etc., 70 N. Y. 497, the action was to recover back moneys paid under an assessment, which was subsequently set aside as illegal and void. Mr. Justice Folger, delivering the opinion of the court, there said (page 500):

"The reversal of the assessment, and the setting it aside as illegal and void, is conclusive that the money obtained upon it by the defendant was got from the plaintiff without primary right. In such case the general rule is that the money, ex æquo et bono, belongs to the plaintiff, and is held by the defendant for his use. The law raises an obligation on the part of him who has received the benefit of it to make restitution. It is upon this principle that an action is maintainable to recover back money collected in satisfaction of an erroneous judgment which has been reversed after payment made."

It was held in Scholey v. Halsey, 72 N. Y. 578, that money paid upon an erroneous judgment or decree of a surrogate could be recovered, and that it was not necessary to the right of action that payment should have been coerced by execution.

The principle of the decision in Clark v. Pinney, supra, and the case last cited, has been applied in numerous other cases, among which are Haebler v. Myers, 132 N. Y. 363, 30 N. E. 963; Bank v. Bayne, 140 N. Y. 321, 35 N. E. 630; and People v. E. Remington & Sons, 60 Hun, 42, 14 N. Y. Supp. 441. In the last-mentioned case the receivers of a corporation were, by an order made by the court at special term, instructed to, and did, pay a certain creditor one of his specific claims as preferred. Subsequently, it was declared by the court of last resort that such claim was not entitled to a preference, and the order of the special term vacated. Upon the payment to such creditor of a later claim as a general creditor, the receiver deducted therefrom the excess paid to him upon the preferred claim under the first-mentioned order, and such action was decided to be proper. Held by Martin, P. J. (page 45, 60 Hun, and page 442, 14 N. Y. Supp.):

"The question of voluntary payment is not, we think, involved in this proceeding. There was in this action a fund in the hands of the court for distribution by its receivers among the creditors of the defendant. The court mistakenly and erroneously instructed the receiver to pay one of the appellant's claims in full. In a proceeding to which he was a party, it was decided by this court and by the court of appeals that he was entitled to receive upon his claim for $292.78 only the same proportionate amount as the other general creditors of the defendant. Thus, he had been paid $183.31 more than he was entitled to receive. The amount of such overpayment was then deducted from the sum which would otherwise have been his due. This excess having been paid by mistake, the receivers could have recovered of the appellant the amount thereof. In re Morgan, 99 N. Y. 145,

1 N. E. 406; In re Underhill, supra; Scholey v. Halsey, supra; Lott v. Swezey, 29 Barb. 87. It is therefore manifest that the sum which the appellant sought to recover in this proceeding did not, ex æquo et bono, belong to him. It was a part of the fund in the hands of the court, which belonged to the creditors of the defendant, and which should be distributed among them."

Another case worthy of reference as bearing upon the point in issue is Clark v. Hougham, 2 Barn. & C. 149, where the plaintiff was allowed to recover, in her representative character, money which she had paid, as such, through mistake, to the defendant.

It would seem from these adjudications that, where moneys are overpaid by reason of a judgment or decree, they may be recovered in an action at law. As the moneys in suit were assets of the estate of the deceased, it is obvious that they did not, ex æquo et bono, belong to the defendant, and that, therefore, the action was properly brought.

It is insisted, however, by the defendant, that Ann Murphy's right of action is personal, and is not one in her representative capacity, and that, consequently, the moneys in controversy are subject to any demand or set-off which he may have against her individually. Viewed in any aspect, this contention is not, under the circumstances, supported by the authorities. In legal contemplation, the moneys which the administratrix was directed by the decree to pay to the defendant were assets of the estate, belonging to the persons entitled thereto (In re Underhill, 117 N. Y. 471, 475, 22 N. E. 1120; People v. E. Remington & Sons, 60 Hun, at pages 42, 45, 14 N. Y. Supp. 441; In re Mullon, 145 N. Y. 98, 104, 39 N. E. 821); and hence they were not her individual property.

In Re Underhill, supra, Peckham, J., defines the status of an executor, saying:

"An overpayment made by the executor to any person entitled to a distributive share does not in any way diminish the amount of the estate which the law says is in the executor's hands for distribution. The law does not recognize any such overpayment, and does not, therefore, permit the executor to credit himself with the amount of the excess. In legal contemplation, the sum is in the hands of the executor, as assets of the estate, which he must pay over to the parties entitled thereto."

Neither can the defendant invoke the rule that, when the purpose of a trust has been fully accomplished, the title or estate of the trustee is at an end, and that, if he is also entitled to the beneficial estate, the two estates, meeting in the same person, are merged, thus causing him to become vested in his own right with the entire interest in the property (Blood v. Kane, 130 N. Y. 514, 519, 29 N. E. 994; In re Mullon, supra); for the reason that persons other than the said administratrix were entitled to share in the distribution of the estate. Moreover, in the absence of proof, it cannot be assumed that the deceased did not leave any debts unpaid. Church v. Howard, 79 N. Y. 415, 419.

It might with very great plausibility be urged that, as a final decree was made, it could be fairly inferred that all debts were paid; but the fallacy of such reasoning is self-evident, when it is remembered that a creditor having a debt against a decedent is not precluded,

by mere omission to present his claim pursuant to notice, from establishing his debt, and demanding an accounting, at any time before the executor or administrator is formally discharged from his trust. In re Mullon, 145 N. Y., at page 104, 39 N. E. 821.   The administrator holds the assets of the estate as trustee of the creditors of the deceased, and of those entitled to distribution under the statute.   Blood v. Kane, 130 N. Y., at page 517, 29 N. E. 994; In re Mullon, 145 N. Y., at pages 103, 104, 39 N. E. 821.

The law is tersely stated by Ruger, C. J., in Deobold v. Oppermann, 111 N. Y. 539, 19 N. E. 94:

"Estates in the hands of administrators are always supposed to be under the immediate control of the surrogate's court, and subject from day to day to such orders as it may make in relation thereto."

The estate being under the immediate control of the surrogate's court, it was in its power to amend or modify the decree theretofore made for the distribution of the estate.   Such amendment was in the interest and for the benefit of newly-discovered parties in interest; and, as they were not parties to the original proceeding, it is manifest that the title of the estate to the moneys so paid pursuant to the original decree was not devested; and, although one of the distributees, it became the duty of the administratrix to seek the recovery thereof.   Bingham v. Bank, 41 Hun, 377, affirmed 112 N. Y. 661, 19 N. E. 416; People v. E. Remington & Sons, supra; Worthy v. Johnson, 10 Ga. 358.   Instead of commencing an action herself, the administratrix assigned to the plaintiff all her right, title, and interest in and to all rights and remedies which she had or possessed, under said decrees, against the defendant, for the recovery of the money so overpaid to him; and the plaintiff has accordingly succeeded to whatever rights the estate had therein.   The assignee, however, took the claim subject to the rights of the persons interested in the estate, and therefore whatever moneys it may recover will inure to their benefit.   Moreover, the plaintiff, as before shown, is the surety upon the administratrix's bond; and, as it may ultimately be called upon to pay the moneys directed to be paid by the amended decree, the action, while prosecuted in the name of the plaintiff, is, nevertheless, practically for the benefit of the estate. Under these circumstances, it seems to me that the assignment was authorized, and that it was within the scope of the plaintiff's powers to take the same.   The decrees, original and amended, were made after due notice to the defendant; and, consequently, he is well aware of the character of the fund which is the subject of this controversy. The facts in the present case are practically undisputed, and, considered in the light of the authorities cited, lead me to the opinion that the moneys in question belonged to the estate of the said decedent, and not to his widow, the administratrix, individually.

The case of Paff v. Kinney, 5 Sandf. 380, quoted by the defendant, differs in its facts from the one at bar, in that the decree there provided that one of the executors should personally pay certain creditors the sum specified therein.   In adverting thereto, Bosworth, J., delivering the opinion of the court (page 392), said:

"Every creditor was paid his proportion of all the moneys embraced in the order, except the corporation of the city of New York. The amount adjudged payable to the latter was placed in Kinney's hands as executor; and it was adjudged that he only, and personally, should pay to the corporation $1,596.51. No other creditor had any interest, legal or equitable, in this fund, or in his obeying the order. The moneys became the individual property of Kinney, as to all the world except the corporation, and also as against the latter unless, on some special equity, it might be proved against the fund while it existed in his hands in specie, and could be traced, to obtain payment by the application of the identical moneys received by him as such executor."

That case was brought to require Kinney to account for the sum last stated; but the complaint failed to allege, in terms or substance, that the city of New York relinquished to the estate its claim to the sum so directed to be paid by the defendant. The same learned judge expatiates upon this branch of the case, at page 396:

"It is unnecessary," he says, "to discuss, and it is not intended to express an opinion, what would be the rights of the estate, or of its creditors, if the complaint had stated facts which showed that the estate was the source from which equitable satisfaction had been derived; and in consideration of that, and for the benefit of the estate, the corporation had released Kinney from the decree against him, and its claim against the estate, pro tanto, by a release to the plaintiff and defendant, as executrix and executor. Such is not the case made by the complaint. * * * If a case can be made giving the plaintiff a right, as creditor, to call the defendant to account as executor, a suit for that purpose should be brought in behalf of all the creditors, or they should be made parties to it."

There is still another consideration to which I have not as yet alluded, to wit, the liability of the defendant to the other next of kin for such proportion of their respective shares in the estate as was received by him. The moneys having been paid pursuant to a decree of the surrogate's court, and not voluntarily, such parties in interest could undoubtedly maintain an action against the defendant for their recovery, and contention could not be seriously made therein that the tortious or negligent acts of the administratrix were a bar or defense. Now, it is patent that, if such acts cannot be asserted in such an action, they surely cannot be urged as a set-off or defense in the present action, which, as before shown, is practically prosecuted for the benefit of the persons interested in the estate. Having thus reached the conclusion that the moneys under consideration were assets of the estate of said decedent, it follows that the defendant cannot assert in this action, either as a set-off or defense, any claim which he may have against Ann Murphy, individually, by reason of her torts (Sperb v. McCoun, 110 N. Y. 605, 610, 18 N. E. 441), or for moneys received by her from the estate as a distributee (Boyle v. St. John, 28 Hun, 454; Deobold v. Oppermann, 111 N. Y., at page 538, 19 N. E. 94).

There now remains for consideration the question whether the statements alleged to have been made by said Ann Murphy to the defendant's attorney respecting the persons interested in the estate of her late husband, upon the faith of which the defendant claims to have been led to buy the shares of his said assignors, create an estoppel against the estate.

LAWYERS' SURETY CO. V. REINACH.

The defendant has referred us to a number of cases (among them, Church v. Howard, supra, and Davis v. Gallagher, 124 N. Y. 487, 26 N. E. 1045) which hold that the admissions or declarations of an executor or administrator while engaged in the performance of some act relating to the estate are competent evidence against it. But even assuming, for the sake of argument, that the said representations constitute an estoppel, I fail to perceive how they can bind the estate. Such statements did not relate to any matter connected with the administration of the estate; and the administratrix was under no duty, legal or otherwise, to answer inquiries concerning the next of kin of the deceased made with a view to purchasing their respective interests in the estate.

As was said by the court in David v. Frowd, 1 Mylne & K. 200, 2 Eng. Ruling Cas. 246:

"The person who takes out administration to an intestate's estate, in most cases, cannot know who are his creditors, and may not know who are his next of kin."

—And by Peckham, J., in Re Underhill, supra:

"The decree also determines as to the validity of a distributive share of the estate. The amount of the distributive share due any particular person must be determined by this decree; and therefore it is open to investigation, not alone the original amount of such share, but also what payments have been made upon such original amount, in order that a final decree may be made for distribution, and of the amount thereof to each person entitled to any share."

If the administratrix, therefore, gave any information concerning the next of kin, she did so as an individual, not as an administratrix, and solely upon her individual responsibility.

It would, indeed, be a reproach to the law if it were not in the power of the court to afford an ample protection to innocent beneficiaries in the estate from the tortious acts of an irresponsive executor or administrator; but, fortunately for the honor of our system of jurisprudence, the rule is otherwise than that so strenuously urged by the defendant, for it is well settled that the unauthorized acts of an executor or administrator with relation to the assets of the estate are treated as his individual acts, and do not estop him from maintaining an action, in his representative capacity, for the recovery of the property. Wetmore v. Porter, 92 N. Y. 76; Lee v. Horton, 104 N. Y. 538, 542, 11 N. E. 51; Deobold v. Oppermann, 111 N. Y., at pages 537, 538, 19 N. E. 94; Colt v. Lasnier, 9 Cow. 320, 331; Paschal v. Davis, 3 Ga. 256; Worthy v. Johnson, supra; Finnegan v. State, 57 Ga. 425; Sellars v. Cheney, 70 Ga. 791; Wilkins v. McGehee, 86 Ga. 771, 13 S. E. 84; Clark v. Houghan, supra; Doe v. Glenn, 1 Adol. & E. 49; Keate v. Phillips, 18 Ch. Div. 560. Furthermore, when third persons sustain any damage by reason of the tortious or negligent acts of the personal representative in the course of the administration of the estate, he is personally responsible (Mills v. Smith, 141 N. Y. 256, 262, 36 N. E. 178; Simpson v. Snyder, 54 Iowa, 557, 558, 6 N. W. 730; 7 Am. & Eng. Enc. Law, 344); and a like responsibility attaches to him where no direct pecuniary advantage has resulted to the estate (Clayton v. Boyce, 62 Miss. 390; 7 Am.

& Eng. Enc. Law, 345). This question of responsibility has been frequently established, notably in the opinions in the cases of Wetmore v. Porter, supra, per Ruger, C. J. (page 85), wherein he says:

"We see no reason why a trustee who has been guilty even of an intentional fault is not entitled to his locus penitentiæ, and an opportunity to repair the wrong which he may have committed."

—And Keate v. Phillips, 18 Ch. Div. 578, by Bacon, V. C., who, speaking for the court, said:

"It cannot be said that because a man commits a misdemeanor with relation to a certain estate, that the estate is thereby forever bound."

In Worthy v. Johnson, supra, the personal representatives of the deceased sold some negro slaves, who were the property of the estate; and, in an action brought to recover them, Lumpkin, J., who wrote in that case, said: .

"The sale * * * being a nullity, and so declared by this court, the title of the estate in the property was not devested; on the contrary, it was the right and duty of the executor and executrix to have instituted suit forthwith against the purchasers to recover the negroes. Nor would they be estopped in their trust character from maintaining their action, the law looking upon the void sale as their individual act."

As no error appears in the record, the judgment should be affirmed, with costs. All concur.